HELEN J. SMITH and JEAN B. SWEET

*v.*

FREDERICK F. WILSON, administrator of Frances M. G. Wilson.

[Decided November 16th, 1911.]

1. At common law, the heirs-at-law of a deceased mortgagor had a right of action to compel the administrator to discharge a mortgage made by the deceased on land.

2. To a bill by heirs against an administrator to compel exoneration of their land from a mortgage made by the deceased, if a bill *quia timet* to establish the complainants' right in case their land should be applied to the payment of the mortgage debt, for which the personal estate is primarily liable, the holders of the mortgage debt are not necessary parties.

3. Under the express provision of *P. L. 1898 p. 738 § 67 et seq.*, claims of heirs against an administrator for exoneration from a mortgage made by the deceased, not presented before the rule to bar creditors is made absolute, are barred.

4. An heir entitled to exoneration by the personal estate from a mortgage, held by a third party, is a creditor within Orphans Court act (*P. L. 1898 pp. 738, 740 §§ 67, 70*), which provides for publication by an ad-

ministrator or executor of notice to creditors to bring in their claims within nine months from the date of such order, and that, after the expiration of such time, the court may, by final decree, order that all creditors not presenting their claims within such time shall be barred.

5. *2 Gen. Stat. 1895 p. 2112 § 47*, and its supplements, which makes the mortgaged property the primary fund out of which debt secured is to be paid, and permits the personal remedy on the bond only after the remedy against the land has been exhausted, abolishes the right of heirs to be exonerated from a mortgage debt, created and owed by the ancestor or testator out of the personal estate of such ancestor or testator.

6. The right of the heir or devisee at common law to exoneration was not allowed, where he received land, encumbered by a mortgage which secured a debt which the ancestor or testator did not owe.

7. Evidence, in an action by heirs of a married woman against her administrator to compel exoneration of their land from a bond and mortgage, made by the deceased to secure her own debt, *held* insufficient to show a presentment of the claim to the administrator within the time required by the Orphans Court act (*P. L. 1898 p. 738 § 67 et seq.*), and before the claim was barred by a final rule against creditors.

8. The right of heirs who have presented no claim against an administrator for exoneration of their land from a mortgage made by deceased within the time required by law to present a claim, where the estate is settled and a surplus remains in the administrator's hands as provided by *P. L. 1898 p. 740 § 72*, cannot be asserted where there is no proof of a judicial settlement of the decedent's estate by the administrator.

9. Under *2 Gen. Stat. 1895 p. 2112 § 47*, which provides that where a bond and mortgage have been given for the same debt the first proceeding shall be to foreclose the mortgage, and that if, at the sale of the mortgaged premises there is a deficiency, the mortgagee may proceed on the bond for such deficiency, a timely presentation by the heirs of a claim against an administrator for exoneration from the burden of a mortgage, made by the deceased, or by themselves as assignees of the mortgage or as parties subrogated thereto by payment of the mortgage debt, does not amount to a claim for the whole debt, but is merely a claim for the payment of any deficiency which may thereafter be declared due to the claimant after his primary security. the land, has been exhausted.

On bill, answer, replication and proofs taken in open court.

*Mr. Gilbert Collins,* for the complainants.

*Mr. David Harvey, Jr.,* for the defendant.

STEVENSON. V. C.

This is a suit by heirs-at-law of a deceased married woman to compel her administrator, her surviving husband, to exoner-

ate their land from the burden of a bond and mortgage made by the married woman to secure her own debt shortly before her decease in December, 1903. Under the common law the right to exonerate in such a case was well settled. *Keen* v. *Munn, 16 N. J. Eq.* (*1 C. E. Gr.*) *398; Campbell* v. *Campbell, 30 N. J. Eq.* (*3 Stew.*) *415; Crowell* v. *Hospital of St. Barnabas, 27 N. J. Eq.* (*12 C. E. Gr.*) *650, 653; Cumberland* v. *Codrington* (*Chancellor Kent, 1817*), *3 Johns. Ch. 229, 251; Creesy* v. *Willis, 149 Mass. 249, 251; 2 Jarm. Wills 681; 1 Robb. Mort. 750, 757; Fish. Mort.* (*1910*) §§ *1318, 1346.*

It is established beyond doubt that the husband as administrator has received money and securities, after all other debts have been paid, far in excess of the mortgage debt.

In April, 1904, the mortgagee, one Van Cleef, assigned his bond and mortgage to William Applegate, and a few days later Applegate assigned to a party who holds for the benefit of the complainants. In fact the complainants procured the assignment from the original mortgagee, Van Cleef, by giving to Van Cleef a mortgage upon other property which they owned for the amount of the mortgage debt. The mortgage debt was thus in fact paid by the complainants while they procured the bond and mortgage to be transferred through Applegate to their appointees who hold entirely subject to their control. The bill therefore may be regarded as a bill by heirs to obtain exoneration from a mortgage debt from the personal estate of their ancestor who executed the mortgage and owed the debt, or perhaps as a bill to enforce the rights of the original owner of the mortgage debt against the personal estate of the intestate on the ground that the complainants have been subrogated to those rights by reason of their having been obliged for their own protection to pay the mortgage debt for which they claim they stood secondarily liable. The arguments and the briefs submitted to the court have, I think, dealt with the case in the aspect first mentioned. The holders of the bond and mortgage by assignment from Van Cleef, who are mere agents or trustees for the complainants, are not made parties to this suit.

No objection has been made to the non-joinder of these parties. If the bill is to be treated strictly as a bill *quia timet* to

establish the complainants' right to be exonerated in case their land should be applied to the payment of the mortgage debt, for which the personal estate in the defendant's hands is primarily liable, the holders of the mortgage debt are not necessary parties. *Woolmershausen* v. *Gullick* (*1893*), *2 Ch. 514.*

The bill in this aspect is not filed to compel the defendant to pay the mortgage debt. The complainants have no concern with the payment of the debt if their land can be relieved therefrom. Payment of the debt may never be demanded from anybody. If the complainants see fit to do so they may take up the mortgage debt, claim subrogation and enforce collection against the fund primarily liable. We are now of course assuming that the complainants have a right to be exonerated according to the ancient well-settled rule.

If the bill must be also regarded in its second possible aspect as above stated, viz., as a bill filed by complainants as the holders of the mortgage debt by subrogation or assignment, to collect the same from the defendant administrator, the absence of the parties who hold the mortgage debt as trustees for the complainants is certainly a serious matter, although it may be that it is not sufficiently serious or embarrassing to make it necessary that the court of its own motion should stay the suit until these parties are brought in. *McLaughlin* v. *Van Keurin, 21 N. J. Eq. (6 C. E. Gr.) 379.*

The answer sets up two defences, *first.* that on January 11th, 1904, a rule to bar creditors was made by the orphans court of Monmouth county and duly advertised, &c., pursuant to the statute (*P. L. 1898 p. 738 § 67 et seq.*), and that on October 14th, 1904. the rule to bar creditors was made absolute; that no claim for payment of the mortgage debt was made to or filed with the defendant as administrator by the holders of the mortgage or by any person for them or on their behalf, and that no claim was ever made that the mortgage was a burden from which the lands in question should be exonerated; so that if the complainants ever had any claim the same is barred by the decree of the orphans court.

Besides the bar of the decree the answer denies that it became the duty of the defendant as administrator to pay the

morigage debt out of the personal estate in his possession and to exonerate the complainants' land from the burden thereof.

The decree barring creditors above mentioned, entered October 14th, 1904, excluded every creditor of the decedent who had neglected "to bring in and exhibit his or her debt, demand or claim" within nine months from the date of the prior order, to wit, January 11th, 1904. *Young* v. *Young, 45 N. J. Law (16 Vr.) 197.*

My conclusion is that the bill of complaint should be dismissed for the following reasons:

(1) No proof of the complainants' claim to exoneration was exhibited under oath within nine months from January 11th, 1904, or at any time thereafter. Counsel for the complainants argues that this claim for exoneration is not such a debt as comes within the terms of this special statute of limitations. I cannot adopt this view. The statutory words are "debts, demands and claims." *P. L. 1898 p. 788 §§ 67, 70.*

It is true that the statute provides only for calling in and barring "creditors" of the estate, but in my judgment a party holding a right to exoneration against the estate from a debt held by a third party is a creditor within the meaning of this statute. Whether the word "creditor" is used in a statute in a narrow or a wide sense must be determined by the object and nature of the statute. In *Ryan* v. *Flanagan, 38 N. J. Law (9 Vr.) 161,* Mr. Justice Van Syckel, speaking for the supreme court of the statute in question, says (at *p. 164*) :

"The object of the statute is to inform the personal representatives of the claims which may be outstanding against the estate of the decedent, that he may know how to administer it, and not be subjected to suits after he has disbursed all the assets." See, also, *Newbold* v. *Fenimore, 53 N. J. Law (24 Vr.) 307, 309; Emson* v. *Allen, 62 N. J. Law (33 Vr.) 491, 493.*

The opinion of Mr. Chief-Justice Beasley in *New Jersey Insurance Co.* v. *Meeker, 37 N. J. Law (8 Vr.) 282,* exhibits the wide range of meaning of the word "creditor" according to the nature and object of the statute in which the same is used.

In that case the remedial statute, entitled "An Act for the relief of creditors against heirs and devisees," was held to use the word "creditor" in a broad sense so as to give the benefit of the act to a party holding a right of action on account of the breach of a covenant against encumbrances. I am unable to perceive any reason why in view of the object of the statute in question all parties holding claims against the estate which may in the future be put in judgment against the executor or administrator, however contingent they may be, should not be deemed creditors within the meaning of this statute. This view is aided by the fact that the parties termed "creditors" or holders of obligations of some sort against the estate, are not merely called upon to bring in their "debts" but their "demands" and their "claims."

(2) If there never had been any statutory bar I think that the defence that there was no duty resting upon the administrator to exonerate the land from the burden of the mortgage debt is sustained, because the act of March 12th, 1880 (*2 Gen. Stat. p. 2112* § *47*), and its supplements, have abolished in cases of this class the right of the heir or devisee to be exonerated from a mortgage debt created and owed by the ancestor or testator out of the personal estate of such ancestor or testator. In such cases the statute expressly makes the mortgage the primary fund out of which the debt secured thereby is to be paid, and permits the personal remedy on the bond only after the remedy against the land has been exhausted.

The ancient rule which is invoked in favor of the complainants in this case is based upon the theory that the personal estate of the testator or intestate is the primary fund out of which his debts are to be paid. *Fish. Mort.* (*1910*) § *1319*. Exoneration was not allowed where the heir or devisee received his land encumbered by a mortgage which secured a debt which the ancestor or testator did not owe. *Campbell* v. *Campbell, supra; Mount* v. *Van Ness, 33 N. J. Eq.* (*6 Stew.*) *262.*

The general rule under consideration accorded with the policy of the English law which protected the heir and had tender regard for landed estates by which families were sustained and family succession was promoted. In modern times, and especi-

ally in America, land occupies a very different position from that which it occupied under the old English system. Men buy lands and put mortgages upon them, sell their equities, and oftentimes deal with the lands which they have mortgaged as the primary fund out of which payment of the debt is to be made. Great fortunes which perpetuate families are perhaps handed down more frequently in the form of personal property than in the form of land. The authorities agree that the ancient rule was founded upon a presumption in regard to intention. The testator could very easily compel his devisee to take lands which he had mortgaged *cum onere*. *Fish. Mort.* (*1910*) § *1322*.

At an early period the State of New York abolished the right of the heir or devisee to exoneration in the class of cases under consideration. *Rev. Stat.* (*1829*) *p. 749 § 4*. The statute provides that—

"Whenever any real estate subject to a mortgage executed by any ancestor or testator shall descend to an heir or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property, unless there be an express direction in the will of such testator that such mortgage be otherwise paid."

The English parliament in 1854 passed a statute similar in effect but much broader, providing that where a person dies seized of land, &c., *charged with any money by way of mortgage,* the heir or devisee shall not be entitled to have the mortgage discharged out of the personal estate or any other real estate of the ancestor or testator, but that such land so received by him shall be primarily liable unless the testator or intestate shall "by his will, deed or other document have signified any contrary or other intention." *17* and *18 Vict. ch. 113*. Subsequent supplementary English legislation was in the direction of extending and enforcing this new law. *30* and *31 Vict. ch. 69; 40* and *41 Vict. ch. 34*.

I am unable to see the force of the argument for the complainants which has been made in this case, based upon the fact that the owner of lands who has mortgaged them to secure his debt, may waive the benefit of this statute. Of course the right under this statute was created for the benefit of the

mortgagor and therefore he may waive it. The difficulty is that in this case the intestate in 1903, when she made this mortgage, and in 1904, when she died, presumably knew the law of the state, and knew that her mortgage debt was primarily charged upon the mortgaged land. In this situation of law and fact she died without making any waiver, and allowed her land to descend to her heirs. Presumably she intended that her heirs should receive her lands just as she held them with this mortgage debt primarily charged upon them. Presumably she intended that her husband should have the residue of her personal estate after the payment of her debts which were not specially charged upon real estate or other property. Under the law of New Jersey as it had stood continuously from 1880, twenty-three years before this mortgage was made, the mortgage debt from its inception was primarily charged upon the land which it covered and the personal liability of the mortgagor could only be enforced after the exhaustion of the primary security. To hold now that the law should presume that the intestate (Mrs. Wilson) intended that the mortgage debt should be paid first out of her personal estate, it seems to me would not be in accordance with common sense. Of course after the death of Mrs. Wilson if any waiver of the benefit of this statute could be made, it would have to be made by the administrator.

Perhaps the change in our law as to exoneration of heirs in cases like this may be summed up in the statement that under the former law of this state and of England, when this rule of exoneration was first laid down, the personal estate was the primary fund out of which all debts of a decedent, including mortgage debts, were to be paid in the absence of any effectual declaration by the decedent of a different intention, whereas under the statutory law of New Jersey dating from 1880, where a bond and mortgage of land is given for the same debt, the land is the primary security, and any personal liability can be enforced only when the remedy against the land has been exhausted or become of no value, and therefore when an owner of mortgaged land dies, whether he owes the mortgage debt or not, the land remains the primary security for the debt in the absence of any legally effectual declaration of intention on his part to the contrary.

(3) Until the bill was amended it could not possibly have,-been regarded as a bill to enforce the collection of the mortgage. debt for the benefit of the complainants who stood subrogated to the rights of the original holders of that debt. By the amendment, however, we have the allegation, than which there is no broader proof in the case, that the assignment from Van Cleef was in consideration of the giving to him by the complainants of their bond for $5,000, the amount of the mortgage debt, secured by their mortgage on other lands owned by them, and that the said Applegate and the said Elizabeth B. Smith and Harriet L. Smith, who were originally alleged in the bill to be the present owners of said mortgage, were "the nominees of the said heirs-at-laws," and that the said mortgage was "held subject to the control" of the complainants. The original bill alleged that the mortgage had never been paid. There are difficulties in· the way of regarding the amended bill as presenting the case of the acquisition of the mortgage debt by the complainant through payment and subrogation, or by purchase and assignment. While there was no argument on this possible aspect of the bill, the testimony was taken upon the question whether the debt on the bond was·presented under oath to the administrator within the prescribed period so as to escape the bar of the decree of the orphans court. This we may note is a very different matter from the proposition that the "claim" and "demand" for exoneration was not presented under oath and therefore was barred.

In view of the scope of the depositions and the argument that was made, it would seem to be proper to consider and decide the issue whether or not the collection of the mortgage debt from the defendant administrator stands barred by the above-mentioned decree. The question of fact is, was this mortgage debt exhibited under oath to the administrator within the period which ended on October 11th, 1904? It appears that a formal proof of the mortgage debt was delivered by Mr. James D. Carton, a practicing lawyer of Asbury Park, New Jersey, to Miss Bertha G. Stryker, a stenographer in his employ, to be served upon the administrator. Presumably, the claim which is typewritten, was prepared by Mr. Carton, and it was sworn to before him as a master in chancery. Miss Stryker did not obtain an opportunity

to effect service for three or four days after she had received the paper, and she testifies that she then effected service upon Mr. Wilson personally, and that a few minutes later he returned the paper to her in Mr. Carton's office, stating that he would not have anything to do with it. Mr. Wilson denies that such service was made. or at least has no recollection of it. I shall not enter into the question whether the paper in fact was served or not; the important matter to determine being whether it was served on or before October 11th, 1904. The jurat recites that the affidavit was taken before Mr. Carton on a day of October, 1904, which is left blank. A copy of the bond is attached to the proof which is made from a printed form of bond which bears upon it the printed name and address of Mr. Carton. Whether Miss Stryker did the typewriting she was not asked. The paper is evidently an accurate and lawyer-like document carefully prepared. The absence of a date in the jurat should, I think, be .taken strongly against a finding in favor of service within the first eleven days of October, 1904. The date in a case like this may be intentionally omitted for a fraudulent purpose, and that possibility makes it proper, I think, that in all cases a paper like this should be regarded as under suspicion.

The significant facts which I think with the other circumstances are fatal to the complainants in this case, relate to the failure of the complainants to produce evidence presumably within their control, which apparently would or at least might fix the date when this paper was served, if in fact it was served at any time. The attention of counsel for the complainant was called to the absence of some of these witnesses, and time was given in order that their testimony might be produced.

The mortgage debt was held by appointees of the complainants, and was wholly under their control. The inference is absolutely unavoidable, as the proofs stand, that the presentation, or attempted presentation, of this debt on the bond under oath to the administrator was business which the complainants attended to on their own behalf, as they were the only parties interested. Presumably. the lawyer, Mr. Carton, was employed by the complainants. The proof of the debt presumably was drawn in Mr. Carton's office, and he undertook to instruct his employe to effect

service.  Accepting Miss Stryker's testimony as accurate, and disregarding the defendant's denial, it appears that some time in or near October, 1903, the proof of the debt was served personally upon the defendant, and that he promptly rejected the paper, throwing it down and leaving it in Mr. Carton's office.  The paper was produced upon the trial of this cause by the complainants, and Miss Stryker in substance stated on the stand that a few days before she gave her testimony Mr. Carton asked her if she remembered seeing this paper before.  Here we have the lawyer who drew and undertook to effect service of this proof of debt, presumably notified promptly that acceptance of the paper had been refused by the administrator, and yet he does nothing but apparently submits to the rejection of the claim.

Neither Mr. Carton nor the complainants, nor the nominal holder of the mortgage debt who made the affidavit attached to the proof, are produced as witnesses in this cause.  Is it possible that none of these persons can establish the date when this affidavit with its dateless jurat in fact was drawn or sworn to?  Did the lawyer attend to this business for nothing?  Did he make no charge in any book which would fix the date when he rendered this very considerable service to his client?  Did not Miss Stryker report to her employer that the paper which she says she served upon the defendant had promptly been returned and rejected by him?

Whatever may be the exact definition of the rule as to the burden of proof in this case, I feel compelled to draw the conclusion that this proof of the mortgage debt was not presented within the time required by law, and therefore the mortgage debt is barred by the statutory decree of the Monmouth orphans court.

(4) The bill, giving all possible force to the meagre amendment, cannot, in my judgment, be deemed as presenting a case under section 72 of the Orphans Court act.  *P. L. 1898 p. 740.* There is no allegation or proof of a judicial settlement of the decedent's estate by the administrator, the defendant.  *Emson* v. *Allen,* 62 *N. J. Law (33 Vr.) 491.*  This is a fatal defect and makes any further discussion of other possible defects unnecessary.  Whether upon a bill aptly framed a case of equitable cognizance could be presented under section 72 of course will not be

considered. Such a bill would have to be supported by the ancient right to exoneration which I have found to no longer exist in a case like this.

(5) Assuming *arguendo* that the enforcement of the mortgage debt against the defendant has not been barred, it is important to see precisely what the presentation under oath to an executor or administrator of a claim on a bond and mortgage like this amounts to. The matter I think is made plain by the case of *Crater* v. *Smith, 42 N. J. Eq. (15 Stew.) 348,* and the same case on appeal, *43 N. J. Eq. (16 Stew.) 636.*

The practice of presenting under oath the whole mortgage debt as due on the bond is sustained by this case, but what the claim amounts to is not a claim for the whole debt, but merely a claim for the payment of any deficiency which may thereafter be declared due to the claimant after his primary security (the land) has been exhausted. Mr. Justice Van Syckel (*43 N. J. Eq. (16 Stew.) 639*), speaking for the entire court of errors and appeals, discusses the effect of the act of March 12th, 1880, as amended in 1881, upon "bonds and mortgages given for the same indebtedness" by a decedent whose estate was before the court, and he says (at *p. 639*) : "The act of 1881 prohibits suit upon the bond until sale is made under the decree of foreclosure, but does not prevent the creditor from presenting his claim to the administrator under the rule to bar. If not presented within the time so limited, it cannot be presented at all. The object of said act is to compel the mortgagee to look primarily to the mortgaged premises for payment, and to limit the time for suing for deficiency to six months from the date of sale."

In the light of this authoritative exposition of the relation of the mortgage debt in this case, to the land covered by the mortgage and the personal estate of the mortgagor who signed the bond and contracted the debt, what possible ground can there be for holding that the complainants as assignees of the mortgage or as parties subrogated by payment of the mortgage to the mortgagee's rights, can stand in any different position from that which the original mortgagee would occupy upon the death of the mortgagor? The complainants if subrogated merely succeed to certain fixed rights and remedies; they get no further or higher

rights; they must therefore exhaust their remedy against the land first, and their proof, if properly made in time, would only entitle them under the statute, within the time limited, to recover any deficiency in case such deficiency remained after the proceeds of the sale of the land had been exhausted.

Recurring also to the independent claim on the part of complainants to exoneration—the only claim under the present pleadings, which perhaps is fairly presented for consideration, the same question may be asked: What possible ground is there for holding that in a case like this the ancient right to exoneration, which was based upon the fact that the personal estate was primarily liable for the mortgage debt, now remains when by this statute the order of liability has been reversed and the land is declared to be primarily liable and the personal estate of the mortgagor only secondarily and contingently liable to satisfy a possible deficiency?

The authority last cited directly refutes the argument of counsel for complainants that the prior liability of the mortgaged land remains only during the lifetime of the mortgagor, if, indeed, there could be any support in reason for such a violent construction of the statute.