Between JACOB HINCHMAN, complainant, and ELLEN
STILES and others, defendants.

1. The principle is well settled that a widow is entitled to her dower in
an equity of redemption.

2. If land is sold under a prior mortgage, in which the wife joined, and
the husband is dead at the time of foreclosure and sale, the court will pro-
tect the widow's thirds to the surplus, against a mortgagee whose mortgage
she did not unite with her husband in executing.

3. But a second mortgage cannot be postponed to a third; it does not
lose its priority from the mere fact that the wife did not sign it. The hus-
band has the right to mortgage his interest in the land without his wife's
consent, and a third mortgage can derive no superiority on that interest
to the second mortgage, because he has procured a lien on the further
rights of the wife.

This was a bill to foreclose, filed by the complainant,
August 6th, 1852. The cause was set down for hearing
upon the bill, and the answer filed by Ellen Stiles.

*Teneyck*, for complainant.

*Dudley*, for defendants.

THE CHANCELLOR. David Stiles, before his marriage
with Ellen Stiles, one of the defendants, on the fifth of
March, 1849, made and executed a mortgage to Benjamin H.
Lippincott, on a tract of land in the county of Burlington,
to secure a debt of one hundred and forty-four dollars. This
mortgage was afterwards assigned to the trustees of Griffith
M. Roberts, who now hold the same, and who are defendants
in this suit.

On the 24th day of April, 1849, which was after his mar-
riage with the said defendant Ellen, David Stiles made and
executed a mortgage to the defendant, Rebecca Slim, to se-
cure a debt of four hundred dollars. Ellen, his wife, did
not join in this mortgage. It did not cover the lot mort-
gaged to Lippincott, but was on a tract of land adjoining
thereto.

VOL. I.                    Z

On the first day of April, 1850, David Stiles and Ellen, his wife, mortgaged to the complainant both tracts of land embraced in Lippincott's and Rebecca Slim's mortgages, to secure a debt of one thousand dollars.

The bill is filed on this third mortgage. David Stiles is dead. His widow, Ellen, is made a defendant, and has answered the bill. The other mortgagees above named are also made parties, and several judgment creditors whose liens are subsequent to the mortgages.

The widow has no rights to be protected as against the *first* and *third* mortgages. The first was executed before her marriage with the mortgagor ; and in the execution of the third she joined with her husband, in the manner prescribed by the statute. But as against the mortgage second in priority, which was not signed by her, she insists her dower right is to be protected.

The principle is well settled in New Jersey, and, I believe, very generally in American courts, that a widow is entitled to her dower in an equity of redemption. A court of equity will always protect her rights, and not allow them to be defeated by any technical rules. If she has an interest in the premises, and has not mortgaged it, the mortgagee has no right to appropriate it to pay his debt. If the land is sold under a prior mortgage, in which the wife joined, and the husband is dead at the time of foreclosure and sale, the court will protect the widow's thirds to the surplus, against a mortgagee whose mortgage she did not unite with her husband in executing. In *Titus* v. *Neilson and others*, 5 *Johns. Ch. R.* 452, the wife of the mortgagor joined in a mortgage in fee ; the mortgagor afterwards executed a second mortgage, in which the wife refused to join. A bill was filed on the first mortgage, and a decree made for sale, but before sale the mortgagor died. The widow filed her petition, and it was held that she was entitled to her dower out of the surplus proceeds remaining, after the first mortgage debt was satisfied. The principle is recognized in *Table* v. *Table*, 1 *Johns. Ch. R.* 45 ; *Hawley* v. *Bradford*, 9 *Paige* 200 ; *Bell* v. *The Mayor, &c., of New York*, 10 *Paige* 49 ; *Harts-*

*horne* v. *Hartshorne*, 1 *Green's Ch.* 349; besides which, numerous other authorities might be cited.

The difficulty in this case is here. The bill is filed by the third mortgagee. It is the intervening mortgage—the second mortgage—that was not executed by the widow. The widow, by her answer, insists that the first and third mortgages are first to be paid, and that after her costs are paid out of the surplus, the second mortgagee must take two-thirds of the residue, and the one-third must be invested for her benefit. And so her counsel contended on the argument. But on what principle can the second mortgage be postponed to the third? It does not lose its priority of payment, from the mere fact that the wife did not sign it. The husband had the right to mortgage his interest in the land without his wife's consent, and a third mortgagee can derive no superiority over that interest to the second mortgagee because he has procured a lien upon the further rights of the wife.

The amount due on the first mortgage, together with that mortgagee's costs, must be first paid out of the proceeds of the lot which the mortgage covers. If there is more than sufficient for that purpose, the residue, or so much thereof as is necessary, must be appropriated to pay, first, the third mortgagee's costs, and then his mortgage. If the proceeds of the sale of the one lot pay off the first and third mortgages, there is no difficulty. Out of the proceeds of the other lot, the widow's costs of this suit must first be paid, and one-third of the residue must be invested so that she may receive the interest during her life. The balance goes to pay the second mortgage, and, if not sufficient for the purpose, the mortgagee, at the death of the widow, will be entitled to the principal invested for the widow's benefit, or so much of it as will be required to satisfy his claim. But suppose the third mortgage is not paid by the proceeds of the sale of the first lot, how, then, are the rights between the second mortgagee and the widow to be settled, consistent with the rights of the third mortgagee? The second mortgagee says: "I am willing the widow's costs should be

paid out of the fund. I will take two-thirds of the surplus, and the other third must be invested for the widow's benefit during her life." But to this, the third mortgagee objects. His mortgage covers all the widow's interest in the fund, and her costs cannot be paid out of the fund, nor can an investment of any part of it be made for her benefit, until the third mortgage is discharged. Nor can the third mortgagee claim any of the fund until the prior encumbrance (the second mortgage) is discharged. There is no question in litigation between the second and third mortgagees. They make no point in the case.

The mortgages must be paid according to their priority. Should there be a surplus after paying all the mortgages, the widow, perhaps, may claim something more than the one-third of the surplus. She may be entitled to her costs, and to have the amount of her interest in the fund, which went to pay the second mortgage, first deducted, and also to have the one-third of the balance. But I have not well considered this point. When the property comes to be sold, it may be unnecessary to do so.

Let a master state the accounts, and let there be a decree for sale, directing the lot embraced in the first mortgage to be first sold, and out of the proceeds let the first mortgagee's costs, and the amount due him, be paid; and the residue, if any, be appropriated, first, to pay the third mortgagee's costs, and then the amount due on his mortgage. Let the proceeds of the sale of the other lot be brought into court, subject to further directions.