GEORGE A. KEENE and others *vs.* POLLY MUNN and others.

1. At common law personal estate is the primary fund for the payment of debts, and the heir-at-law may call upon the executor to exonerate the land by discharging the mortgage debt out of the personal estate. The devisee stands in the same position as the heir, and is entitled to the same equity.

2. But the mortgagee, or alienee, of the heir or devisee, has no such equity. The principle is adopted in favor of the heir or devisee alone, and not in favor of his alienee.

3. Where a mortgagor has from time to time aliened certain portions of the mortgaged premises, that portion not aliened will be first sold to satisfy a decree of foreclosure and sale; if such sale do not bring sufficient to satisfy the decree, then the parcel last aliened will be sold, and so on in the reverse order of the conveyances, until the decree is satisfied.

---

*Ranney,* for complainants.

*Taylor,* for defendants, Ira and James Peck.

*Bradley,* for defendant, Aaron Peck.

*Weeks,* for defendant, B. W. Benson.

THE CHANCELLOR. The bill is filed to foreclose a mortgage given by Isaac Munn and Polly, his wife, for $500, on two tracts of land in Orange. The mortgage bears date on the eleventh of October, 1824, and was given to Aaron L. Burnet, and by him assigned to the complainants. On the thirtieth of April, 1834, the mortgagor and wife conveyed one of the tracts to William Peck, by whom it was subsequently conveyed to Ira and James Peck, two of the defendants. This lot being first aliened by the mortgagor, it is admitted that the mortgage debt is to be charged primarily on the other tract known as the homestead lot. On the fourth of November, 1853, the mortgagor and wife conveyed part of the homestead tract to James H. Simpson. Simpson gave a mortgage of the same date with the deed, to his grantor for $500, part of the purchase money. That mortgage is now held by Polly Munn, the widow and surviving executor of Isaac Munn.

Isaac Munn, the mortgagor, died on the fifteenth of August, 1856. By his will, duly executed to pass real estate, he devised to his wife, Polly Munn, the use of all his lands during her widowhood; and to his son, John O. Munn, his homestead house and lot, together with a lot of mountain woodland, subject to the payment of sundry legacies to his other children, to be paid in one year after the death of his wife.

On the eleventh of August, 1860, John O. Munn gave to Aaron Peck a mortgage on his interest in the real estate so devised to him by his father, the mortgagor, for $300. On the thirteenth of December, 1861, he conveyed the equity of redemption in the premises to Benjamin W. Benson. Benson, by his answer, claims that in equity the amount of the $500 mortgage, given by Simpson to Isaac Munn, and now in the hands of his executrix, should be applied in exoneration of the land devised to John O. Munn by his father, the mortgagor, and that to this end, that part of the homestead lot sold and conveyed by the mortgagor to Simpson, should be first sold to pay and satisfy the mortgage of the complainant.

By his answer he alleges that he purchased subject to the mortgage to Aaron Peck, and to the legacies contained in the will of Isaac Munn, deceased, and subject to no other encumbrance; and that at the time of the purchase he was informed by the vendor of the existence of the complainants' mortgage, but that the mortgagor in his lifetime had appropriated the mortgage given by Simpson to him, to the payment and discharge of the complainants' mortgage; and that the executors of the said Isaac Munn then held the Simpson mortgage for that purpose, and would so apply it.

There is no evidence in support of this allegation of the defendant's answer. The only question in the case is, whether the parties claiming title under John O. Munn, the devisee of the mortgagor, are entitled to have the complainants' mortgage paid out of the personal estate of the mortgagor, in exoneration of the land devised.

At common law, personal estate is the primary fund for the payment of debts, and the heir-at-law may call upon the executor to exonerate the land by discharging the mortgage debt out of the personal estate, upon the ground that the personal estate had the benefit of the money for which the mortgage was given. The devisee stands in the same position as the heir, and is entitled to the same equity. But the mortgagee, or alienee, of the heir or devisee has no such equity. The principle is adopted in favor of the heir or devisee alone, and not in favor of his alienee. *Bacon's Abr., Mortgage E; Haven* v. *Foster,* 9 *Pick.* 112; *Scott* v. *Beecher,* 5 *Maddock* 96; *Cumberland* v. *Codrington,* 3 *Johns. Ch. R.* 229; *Hamilton* v. *Worley,* 2 *Vesey* 62; 1 *Washb. on Real Prop.* 566.

The common law rule in favor of the heir or devisee, is recognized and altered by a provision of the revised statutes of the state of New York, which makes the land devised subject to a mortgage, the primary fund for the satisfaction of the mortgage debt. 1 *Rev. Stat.* 749, § 4; *Waldron* v. *Waldron,* 4 *Bradf. R.* 114; *Taylor* v. *Wendel, Ibid.* 324; *Mosely* v. *Marshall,* 27 *Barb.* 42; *Rapalye* v. *Rapalye, Ibid.* 610.

The complainants are entitled to a decree for foreclosure and sale of the mortgaged premises in the order and priority above indicated. That part of the mortgaged premises not aliened by the mortgagor in his lifetime, must be first sold.