Krueger v. Ferry.

GOTTFRIED KRUEGER

*v.*

EBENEZER L. FERRY AND WILLIAM H. AKIN.

1. The right of a mortgagor to compel a mortgagee in possession to account for the rental value of the mortgaged premises, is, in a suit by the mortgagee to foreclose, a pure matter of defence, which the mortgagor may avail himself of by answer.

2. The new facts which may properly be introduced into a pending litigation, by means of a cross-bill, are such, and such only, as are so directly and closely connected with the cause of action on which the original bill is founded, as to render the cross suit a mere auxiliary of the original suit, or a graft or dependency upon it.

3. A purchaser of an equity of redemption, at judicial sale, takes the land burdened with the mortgage, and he has no right, therefore, to ask that some other fund be applied in discharge of the mortgage debt in relief of his estate.

4. The personal estate of a decedent is the primary fund for the payment of his debts, and an heir, or devisee, or widow, has a right to have it so applied in relief of the land which they take, but this right belongs to them alone. Their alienee or mortgagee has no such right.

On motion to dismiss cross-bill, heard on notice given under No. 215 of the rules.

*Mr. Samuel McDonald*, for motion.

*Mr. Anthony Q. Keasbey*, for defendants.

VAN FLEET, V. C.

This suit is brought to foreclose a mortgage made by John Laible, and Johanna, his wife, to William Ortland, bearing date July 2d, 1860. The mortgage embraces a tract of land situate in the city of Newark, and was given to secure the payment of $3,500, with interest, at the end of a year from its date. The complainant obtained title to the mortgage, by assignment, on the 4th of March, 1881. He was at that time in possession of the mortgaged premises. John Laible, the mortgagor, died tes·

tate, on the 21st of August, 1862. At the time of his death, he was the owner of a large brewery in the city of Newark, in which he was carrying on the business of a brewer. By his will he directed that his business should be continued after his death. This direction was obeyed, and the defendants, (Ferry and Akin) became large creditors of the business, furnishing almost all the malt that the business required. The amount remaining due to them in 1874 exceeded $65,000. They filed their bill in this court, in that year, to obtain a decree adjudging what part of John Laible's estate should be held to have been embarked by him in business, and also directing that they and the other creditors of the business, should be paid out of the estate so embarked. Relief was given to the defendants both in this court and by the court of errors and appeals, but the court of errors and appeals decided that the *quantum* of the estate so embarked was much less than that which this court adjudged the testator had embarked. *Ferry* v. *Laible, 4 Stew. Eq. 566 ; S. C. on appeal, 5 Stew. Eq. 791.*

The decree finally made in the suit adjudged the mortgaged premises now sought to be condemned to sale for the payment of the complainant's mortgage, to be a part of the trade property, and directed that they should be sold for the payment of the trade debts. They were sold, under that decree, to the defendants on the 1st of March, 1881, and the defendants thus acquired an interest in the mortgaged premises which made them necessary parties to this suit.

The defendants have answered the complainant's bill. They admit the due execution of the mortgage on which the complainant's bill is founded, and say that it may be true that he is now the owner of the mortgage, but require him to prove his title. They also say that they have never had possession of the mortgaged premises, but that the premises were in possession of the complainant at the time they acquired their title to them, and have remained in his possession ever since, and that if he is the owner of the mortgage in question, he is a mortgagee in possession of the mortgaged premises, and as such is bound to account for their rental value.

28

The defendants have also filed a cross-bill, and it is the relief which they seek by this pleading which forms the subject of the present controversy.

The defendants, by their cross-bill, make three distinct claims to relief: First, they say that the complainant, being a mortgagee in possession, must account for the rental value of the mortgaged premises. Second, they say that John Laible died possessed of a large personal estate, sufficient to pay all his debts, including that of the complainant, and also seized of several tracts of land, which he empowered his executors to sell, and some of which they still hold, unsold, and that inasmuch as there is a large balance still due to them on the decree which they obtained as creditors of the *post mortem* business, and that as the personal estate of a decedent is, by law, the primary fund for the payment of his debts, and that inasmuch, also, as their debt was contracted pursuant to the direction of John Laible, and to enable his executors to carry out his principal testamentary scheme, their position, in this litigation, is invested with such strong and extraordinary equities, that the court should, before condemning their property to sale for the payment of the complainant's debt, exhaust all other possible means of satisfying that debt, even if it should be necessary to go to the extent of compelling the executors to make good any loss which John Laible's estate has sustained in consequence of their wrongful acts or omissions. And, third, they say that the complainant, in December, 1874, procured a large amount of the personal property embarked in the *post mortem* business, and which stood liable in equity for the payment of the trade debts, to be seized and sold under a judgment which he had previously recovered against Johanna Laible, who held possession of such property as one of the executors of John Laible, and also as one of the managers of the *post mortem* business, and at such sale purchased the property himself, and afterwards took possession of it and applied it to his own use; and thus, the defendants say, the complainant, without right or warrant of law, obtained over $9,000 worth of property, which should, in equity, have been applied to the payment of the trade debts. The defendants claim that

by force of these facts they are entitled to a decree in this suit, requiring the complainant to account for the value of the property so obtained by him, and that he be directed to pay the same, either to them or to the receiver, already appointed in the suit which they brought to establish their rights as creditors of the *post mortem* business. The complainant moves to dismiss the cross-bill, on the ground that its subject-matters are so foreign to, and distinct from, the matter put in litigation by the original bill, that they cannot be regarded as, in any sense, necessarily connected with or auxiliary to the subject-matter of the original suit.

The defendants' right to have the complainant to account for the rental value of the mortgaged premises, during the time he has been in possession of them under his mortgage, is a pure matter of defence, and, like other pure defences, should be interposed by answer. They have set it up in their answer, and as they can have the full benefit of it under that pleading, a cross-bill is both useless and irregular.

The other claims to relief made by the cross-bill are, in my judgment, so entirely foreign to the cause of action upon which the complainant rests his right to relief, that the court must, both for considerations of justice and convenience, deny the defendants' right to litigate them in this suit.

Whether a cross-bill is filed for the purpose of enabling a defendant to make a defence more complete and effectual than he would be permitted to make if he stood on an answer alone, or for the purpose of enabling the court to do more complete justice to all parties, in respect to the matter put in litigation by the original bill, the rule is imperative that the new facts sought to be introduced by it must be so directly and closely connected with the cause of action set up in the original bill as to render the cross-suit a mere auxiliary of the original suit, or a graft or dependency upon it. "A cross-bill," says Cooper, " *ex vi terminorum*, implies a bill brought by a defendant in a suit against the plaintiff respecting the matter in question in that bill ; and it is a weapon of defence in such case. But sometimes it is brought against the codefendants in such depending suit, where they have

opposite claims, which the court cannot determine upon the bill already filed, and the determination of such clashing interests is still necessary to a complete decree upon the subject-matter of the suit." *Cooper's Eq. Pl. 85.*

And Mitford says that where a cross-bill is not filed as a means of defence, it is " a proceeding to procure a complete determination of a matter already in litigation." *Mitf. Eq. Pl. 76.*

The new facts which it is proper for a defendant to introduce into a pending litigation, by means of a cross-bill, are such, and such only, as it is necessary for the court to have before it in deciding the questions raised in the original suit, to enable it to do full and complete justice to all the parties before it in respect to the cause of action on which the complainant rests his right to aid or relief. If a defendant, in filing a cross-bill, attempts to go beyond this, and to introduce new and distinct matter, not essential to the proper determination of the matter put in litigation by the original bill, although he may show a perfect case against either the complainant, or one or more of his codefendants, his pleading will not be a cross-bill, but an original bill. *Ayers* v. *Carver, 17 How. (U. S.) 591 ; Cross* v. *De Valle, 1 Wall. 1 ; Rubber Co.* v. *Goodyear, 9 Wall. 807 ; Galatian* v. *Erwin, Hopk. 48, 8 Cow. 361.*

The chancellor, in *Carpenter* v. *Gray, 10 Stew. Eq. 389,* held that a cross-bill must be confined to the matter contained in the original bill, and that if a defendant attempts, by cross-bill, to engraft, on the litigation introduced by the complainant's bill, questions not necessary to the proper determination of the complainant's right to relief, his cross-bill must be dismissed.

It is obvious, I think, that, if we try the pleading under consideration by these rules, it must be held to have been improperly filed, and should therefore be dismissed.

But I think this pleading is subject to a more formidable objection than that urged against it by the counsel of the complainant. According to my view, it presents no ground upon which any relief whatever can be given to the defendants. The defendants are creditors of the *post mortem* business, and, as such, have a very limited remedy. They must look alone to the prop-

erty embarked in the *post mortem* business for the payment of their debts. They have no right to or claim upon the testator's general estate. This is the well-established rule. Both this court and the court of errors and appeals have affirmed it whenever the defendant's rights in this respect have been presented for judgment. *Ferry* v. *Laible, 12 C. E. Gr. 146; S. C., 4 Stew. Eq. 566 ; S. C. on appeal, 5 Stew. Eq. 791.* The mortgaged premises, at the time they were embarked in the *post mortem* business, were subject to the complainant's mortgage, and hence all that was embarked was the testator's equity of redemption, and this was all the defendants acquired when they took title to them. By their purchase they acquired a right to redeem the land from the debt for which it stood pledged by paying the debt, but, having acquired merely an equity of redemption, and paid for that alone, and not the full value of the land, they stand without the least right to call upon the court to apply any other fund to the payment of the mortgage debt in exoneration of their estate. They took title to the land subject to the burden of the mortgage, and they must therefore either pay the mortgage themselves, or suffer the land to be sold for its payment　*2 Washb. on Real Prop. 567.*

It is undoubtedly true that the personal estate of a decedent is the primary fund for the payment of his debts, and that an heir-at-law, or devisee, or widow, has a right to call upon the administrator or executor of the decedent to exonerate his land from a mortgage debt existing thereon, for which the decedent is personally liable, by paying the same out of the personal estate, but this right belongs alone to the three classes of persons just mentioned. An alienee or mortgagee of an heir or devisee has no such right. *Keene* v. *Munn, 1 C. E. Gr. 398 ; 2 Washb. on Real Prop. 566.*

It would seem, therefore, to be entirely clear that the defendants are without the least right in equity to have the complainant's debt cast upon the testator's general estate.

The defendants also say that the complainant, in 1874, over eleven years ago, wrongfully possessed himself of over $9,000 of the trade property, and thus converted to his own use assets

which should have been applied to the payment of the trade debts. The title to this property was in the executors. If the complainant obtained it wrongfully, the legal injury resulting was done to the executors. No wrong was done to the defendants. They had neither title to the property nor a lien upon it. The executors, by acquiescence or participation in the wrongful acts of the complainant, may have rendered themselves personally liable to the defendants and the other creditors of the *post mortem* business for the value of the property so diverted or abstracted, but, if so, it is manifest that that question forms no part of this litigation, and should not be examined or decided in this suit.

The cross-bill must be dismissed, with costs.