GRACE LOUISE HILL and HENRY J. RUSSELL, executors under the last will and testament of Thomas Hill, deceased, complainants-appellees,

*v.*

ERNEST PERRY HILL et al., defendants-appellants.

[Decided November 19th, 1923.]

H. executed two bonds and secured the same by two mortgages upon certain real property owned by him. H. died, leaving a will by which he devised the property so encumbered in trust for the widow and children of a deceased son. The will provided for the payment of his just debts and bequeathed the residue of his estate in three equal parts, one to the widow and children of the deceased son and the other two parts to two sons who survived the testator. The personal estate was sufficient to pay all debts, including said mortgages. The trustee and beneficiaries of the real estate specifically devised demanded of the executors of the will payment of said mortgages out of the personal estate. The two sons as residuary legatees of two-thirds of the residue of the estate contended that the trustee and beneficiaries must take the real estate encumbered by the mortgages. Upon a bill filed by the executors for instruction—*Held:* First, that the devisee was entitled to exoneration of the real estate from said mortgages by the payment thereof out of the personal estate; second, that chapter 170 of the laws of 1880, as amended in 1881 (*Comp. Stat. p. 3421*), did not abolish the common law rule in this state of exoneration from the personal estate of lands specifically devised from the lien of mortgages created by the testator.

On appeal from the court of chancery.

*Messrs. Autenreith & Gannon,* for the defendants-appellants Ernest Perry Hill and Arthur Edward Hill (*Mr. William R. Gannon,* of counsel).

*Mr. James E. Pyle,* for the complainants-appellees.

*Mr. J. Haviland Tompkins,* for the defendants-appellees Grace Louise Hill, trustee, &c., and others.

The opinion of the court was delivered by

KATZENBACH, J.

Thomas Hill, of Jersey City, was the owner of real estate located in said city and known as Nos. 57 and 59 Newark avenue. On November 21st, 1917, he gave his bond to the Provident Institution for Savings of Jersey City for $8,000 and secured the same by a mortgage on said property. On March 19th, 1919, he again gave his bond for $2,000 to the same obligee and secured the same by a mortgage on the same property. On January 1st, 1919, the $8,000 mortgage became due and was not paid during his lifetime. On July 1st, 1919, the $2,000 became due and was not paid. On June 20th, 1919, Thomas Hill died leaving a will dated February 14th, 1918, which was duly probated. In the first paragraph of the will he directed that all his "just debts and funeral expenses be first fully paid."

In the second paragraph he devised the real estate above mentioned to Grace Louise Hill, a granddaughter, in trust, for the benefit of the widow and four children of a deceased son. The third and fourth paragraphs of the will relate to certain bequests having no bearing upon the questions involved in this litigation. The fifth paragraph provided that his residuary estate should be divided into three equal parts, one of which should be again divided equally between the widow and four children of his deceased son, one of the remaining two parts he bequeathed to his son Ernest Perry Hill, and the other part he bequeathed to his son Arthur Edward Hill. He appointed Grace Louise Hill and Henry J. Russell executors of the will. The executors duly qualified.

The personal estate of the testator is more than sufficient to pay all the debts, including the principal and interest due on the bonds and mortgages mentioned. The Provident Institution for Savings submitted no claim on the bonds to the executors. An order to limit creditors was taken on July 1st, 1919, and a decree barring creditors was entered on April 3d, 1920. Prior to the entry of the decree a demand had been made by the trustee and beneficiaries of the trust declared

in the second paragraph of the will for the payment of the bonds and mortgages out of the personal estate. The residuary legatees, Ernest Perry Hill and Arthur Edward Hill, contend that the trustee must take the real estate with the encumbrances upon it, and that the executors have no legal right to pay off the mortgages out of the personal estate. Upon this impasse being reached between the trustees and beneficiaries of the trust and the residuary legatees mentioned, the executors filed a bill in the court of chancery to determine which contention is correct. The above facts were either admitted in the pleadings or stipulated by the parties and the case submitted to Vice-Chancellor Lewis. The learned vice-chancellor advised a decree directing the executors to pay the principal and interest due on said mortgages out of the personal estate so as to exonerate from the lien of said mortgages the real estate specifically devised in trust under the second paragraph of the will. This decree Ernest Perry Hill and Arthur Edward Hill have appealed to this court.

The appellants concede that under the common law in this state, where lands are specifically devised subject to mortgages made by the testator, that the personal estate is, in the absence of any statute to the contrary, primarily liable for the discharge of said mortgages. This rule of law found early expression in our reports being very clearly and succinctly stated by Chancellor Green in the case of *Keene et al.* v. *Munn et al., 16 N. J. Eq. 398,* in the following language: "At common law, personal estate is the primary fund for the payment of debts, and the heir-at-law may call upon the executor to exonerate the land by discharging the mortgage debt out of the personal estate, upon the ground that the personal estate had the benefit of the money for which the mortgage was given. The devisee stands in the same position as the heir, and is entitled to the same equity. But the mortgagee, or alienee, of the heir or devisee has no such equity. The principle is adopted in favor of the heir or devisee alone, and not in favor of his alienee." (Citing authorities.)

Later cases to the same effect are *Krueger* v. *Ferry, 41 N. J. Eq. 432,* and *Smith* v. *Wilson, 79 N. J. Eq. 310,* where (at *p. 312*) there is cited a long list of New Jersey and other authorities in support of this doctrine.

The reasons for the rule as gathered from these decisions are that the personal estate of the decedent has been increased by the money received from the mortgages, and that the personal estate has always been considered the natural fund for the payment of debts.

The contention of the appellants is that this doctrine of exoneration has been abolished in this state by chapter 170 of the laws of 1880, as amended in 1881 (*Comp. Stat. p. 3421*), which reads as follows:

"That in all cases where a bond and mortgage has or may be hereafter given for the same debt, all proceedings to collect said debt shall be, first, to foreclose the mortgage, and if at the sale of the mortgaged premises under said foreclosure proceedings the said premises should not sell for a sum sufficient to satisfy said debt, interest and costs, then and in such case it shall be lawful to proceed on the bond for the deficiency, and that all suits on said bond shall be commenced within six months from the date of the sale of said mortgaged premises, and judgment shall be rendered and execution issue only for the balance of debt and costs of suit."

This contention of the appellants finds support in two cases decided in the court of chancery. The first case is that of *Smith* v. *Wilson, supra.* In this the bill was filed by the heirs-at-law of a deceased married woman to compel her administrator, her surviving husband, to exonerate their land from the burden of a bond and mortgage made by the married woman to secure her own debt shortly before her decease in December, 1903. The common-law rule of exoneration was recognized, but the learned vice-chancellor held that the right of exoneration in this class of cases had been abolished by the 1880 statute, and that the heirs-at-law took the real estate subject to the mortgage encumbrance thereon created by the decedent. This case was decided in November, 1911. The other case taking the same view is that of *Atkinson* v. *Atkinson, 84 N. J. Eq. 105,* decided in December, 1914. The

bill in this case was filed by an heir-at-law to obtain exoneration of lands which had descended to him from a mortgage made by the ancestor. The learned vice-chancellor deciding the case followed the decision in *Smith* v. *Wilson, supra,* citing no other decision.

Prior to the rendering of the two decisions above mentioned, and after the passage of the statute of 1880, there were two cases involving the same question before our courts which were decided adversely to the contention of the appellants in the case at bar. The first of these cases was that of *Higbee* v. *Morris, 53 N. J. Eq. 173,* decided by this court in 1895. Mr. Justice Dixon, who spoke for the court, said: "The most satisfactory solution of the doubt thus engendered is found in the legal rule, that the personal estate of a testator is the primary fund for the payment of his debts, even though the debts be secured by mortgage upon his realty, and that the personalty will not be exonerated from this primary liability merely because the testator has evinced a purpose to charge his debts upon his real estate, unless he has clearly indicated an intention to discharge his personal property therefrom."

While in this case it was held that the residuary real estate was not chargeable with the debt in exoneration of the mortgaged premises, there being in the will no evidence of an intention that it should be so charged, yet the case reaffirmed the common law rule of the exoneration of mortgaged lands specifically devised out of the personal estate where the debt had been created by the testator. The second of these cases is *Hetzel* v. *Hetzel, 74 N. J. Eq. 770,* in which Chancellor Walker (then a vice-chancellor) decided that devisees were entitled to have a mortgage made by the testator paid out of the personal estate in exoneration of the lands, but must accept the lands subject to the mortgages which were upon them when acquired by the testator. This decision is a recognition of the common law rule of exoneration made twenty-eight years after the passage of the 1880 statute. Neither of the two cases last mentioned made any reference to the effect, if any, of the 1880 statute upon the common law

rule of exoneration. The appellants insist that the applica-
tion of the 1880 statute was overlooked and not passed upon
in these cases, and had the attention of the courts, deciding
these cases, been directed to the statute and its effect on the
common law rule of exoneration, the outcome of the cases
would have been different. In the opinion in the court below
the learned vice-chancellor did not accept the view advanced
by the appellants. He held that the common law doctrine of
exoneration exists to-day in this state and was not abolished
by the 1880 statute. In the view thus expressed we concur.
An examination of the statute discloses no intention, so far
as we can discover, of abolishing the common law doctrine of
exoneration. It does not say so in express words. Such an
intention could only be arrived at by giving to the statute a
strained construction which is unwarranted, when we consider
that if it was the legislative intent to change the long-estab-
lished common law doctrine of exoneration, it would have
been easy for the legislature to have used words which would
have been apt and convincing of the legislature's desire to seek
by the statute such an end. Such a purpose would naturally
be indicated in the title of the act. The title of the 1880
statute is "An act concerning proceedings on bonds and
mortgages given for the same indebtedness, and the fore-
closure and sale of mortgaged premises thereunder." This
title shows that the act is one which relates to procedure only.
It changes the procedure to be followed by the holder of a
bond and mortgage in the collection of the debt represented
by the bond for which the mortgage is the surety. That it is
a statute of procedure and not a statute intended to abolish
a well-established rule of law is evidenced in a measure by
the purpose of its enactment stated by Chief-Justice Beas-
ley. in the case of *Mershon* v. *Castree, 57 N. J. Law 484,* in
these words: "The hardship that the statute was intended to
alleviate was the seizure and sale of the chattels of the mort-
gagee by virtue of a judgment on the bond, before resorting
to the land. No purpose is observed in it to abridge the
right of the mortgagee beyond that measure. The statute

must be construed strictly, as it is in derogation of the common law force inherent in the bond and mortgage."

The act did not relieve the obligor of the obligation assumed by him in making the bond. It merely provided that before action could be taken on the bond the obligee should realize upon the real surety given to secure the bond. In this connection the language of this court in the case of *Smith* v. *Crater, 43 N. J. Eq. 637*, is quite significant. In that case the mortgagor had died and the mortgagee had foreclosed his mortgage and filed a claim with the administrators of the estate. A creditor insisted that by force of the statute of 1881 (the act of 1880 amended) the equity of redemption was extinguished and the lands had been accepted in full satisfaction of the claim. In considering this phase of the case this court said: "The act of 1881 prohibits suit upon the bond until sale is made under the decree of foreclosure, but does not prevent the creditor from presenting his claim to the administrator under the rule to bar. If not presented within the time so limited, it cannot be presented at all. The object of said act is to compel the mortgagee to look primarily to the mortgaged premises for payment, and to limit the time for suing upon the bond for deficiency to six months from the date of sale. It would be a perversion of the law to so construe it, that, in case of the death of the obligor before the foreclosure sale, his personal liability on the bond could not be resorted to. There is nothing in the language of the act which indicates an intention to deprive the bondholder of his rights of action under any circumstances, provided he sues within the limited time."

In the case of *Allen* v. *Allen, 34 N. J. Eq. 493,* Vice-Chancellor Dodd held that the 1880 statute simply regulated the remedy, but did not destroy or take it away. The opinion below refers to the statement of Vice-Chancellor Van Fleet in *Toffey* v. *Atcheson, 42 N. J. Eq. 182,* "that all that this statute attempts to do is to prescribe a new rule of practice." With the exception of the cases of *State v. Wilson, supra,* and *Atkinson* v. *Atkinson, supra,* the statute has been looked upon by our courts since its enactment forty-three years ago as a

statute relating solely to remedy and procedure. As pointed out in the opinion below, it must be liberally construed to seek the end for which it was apparently designed, but strictly construed if it be insisted that the purpose is to alter fundamental rules of law and rights. We think the wording of the statute, title and body, clearly makes it one of procedure only, and not one abolishing the fundamental doctrine of exoneration from the personal estate of lands from debts created by a testator or ancestor.

The decree of the court of chancery is affirmed, with costs.

*For reversal*—None.