ALEXANDER CADOO, JR., complainant,

*v.*

SARAH E. F. CADOO, sole acting executrix, &c., of Alexander Cadoo, deceased, et al., defendants.

[Submitted February 7th, 1924. Decided February 29th, 1924.]

1. Where lands, which are subject to a mortgage, are devised, resort must first be had to the residuary personal estate for the payment of the mortgage, if it is to be paid at all from testator's estate.

2. Where testator directed the payment of all his just debts, and gave his executors express power of sale of his residuary real estate, and devised other real estate which was subject to a mortgage which he had recently placed thereon, upon the residuary personal estate proving insufficient to pay all his debts, resort cannot be had to the residuary real estate for the payment of this mortgage, unless an intention to make the mortgage a charge upon the residuary real estate is expressed in or can be inferred from the provisions of the will.

On bill, &c.

*Messrs. Ackerson & Ackerson,* for the complainant.

*Mr. William A. Coddington* and *Mr. William D. Murray,* for the defendants.

Foster, V. C.

This action is brought to obtain the construction of the will of Alexander Cadoo, deceased, on these questions:

*First.* Does complainant take certain real estate in Hoboken which testator devised to him, freed from a $30,000 mortgage thereon? and

*Second.* Is the gift of $20,000 which the testator made to his widow in settlement and discharge of an antenuptial agreement, and in lieu of dower, a preferred claim against his estate, to be paid before the above-mentioned mortgage? Testator died on July 3d, 1919, leaving him surviving the complainant, his son by his first marriage; the defendant Sarah E. F. Cadoo, his second wife, and the other defendants, two daughters of his second marriage.

Testator made his will on June 18th, 1913, about three months after he had placed a mortgage for $30,000 on the Hoboken property, which he devised to his son.

By the first article of his will, testator directed his executors "to pay all my just debts and funeral expenses."

By the second article he devised to complainant the real estate in Hoboken without reference to or mention of the mortgage thereon. This property was assessed in 1919 at a value of $68,600.

By the third article he devised to his two daughters certain real estate in the borough of Manhattan, in New York City. This property was assessed in 1919 at $55,000.

By the ninth article he gave to his widow, the defendant, $20,000, and directed that there should be paid her "said sum to be received by her in full satisfaction and discharge of the antenuptial agreement made between us and in lieu of all right of dower in my real estate."

By the tenth article the residue of the estate was given to the widow and the three children, to be divided among them equally.

The real estate included in this residue is valued at $40,-925, and none of the real estate left by testator, except the Hoboken property, is encumbered by mortgage or other liens.

The net personal estate after the payment of inheritance tax, &c., and including therein $1,050, the proceeds of the sale of a lot at Leonardo, now amounts to $1,301.49.

Testator at the time of his death was about eighty-six years old, and was a resident of Summit, to which place he had removed from New York City about 1903.

Most of his income-producing property was in New York City, and he and his son managed his properties and collected the rents. Complainant's only source of income was what his father paid him, and he and his family lived in a house in Summit, which his father had given him, valued at $6,000.

Testator's attorney was Richard J. Lewis, of the New York bar, and he drew the will in question.

Prior to his marriage to his second wife, testator entered into an antenuptial agreement to pay her $20,000 in lieu of dower; this amount was not paid, and it is claimed by defendant that its payment was preferred and provided for by the ninth article of the will.

The specific legacies amount to $28,000, including the one to the widow, and the personal estate is insufficient to pay them, amounting, as stated, to only $1,300.

Testator told his widow he had made provision for her in his will, and that the antenuptial agreement was no

longer necessary, and it was thereupon destroyed. Testator about this time gave her as a gift property on Eighth avenue, in New York City, valued in 1919 at $42,000, on which there was then a mortgage of $20,000, which has since been reduced to $16,000, and he also gave her certain properties in Summit, valued at $23,500.

The executors are expressly authorized to sell and convey all real estate not specifically devised, and until the residuary real estate is sold the expenses of its upkeep testator directed should be borne by his son paying one-half and his two daughters jointly paying the balance; the widow is not required to make any contribution for such upkeep.

On the valuations mentioned, it appears the widow received prior to testator's death property valued at $49,500 above encumbrances; that under the will the two daughters between them receive property valued at $55,000, and the equity in the Hoboken property given to the son is valued at $38,600.

In the determination of the first question submitted, viz.: Whether complainant takes the devise of the Hoboken property freed from the lien of the $30,000 mortgage thereon. I find the law well settled in this state to the effect that where lands which are specifically devised are subject to mortgages made by the testator, the personal estate is primarily liable for the discharge of such mortgages. *Keen* v. *Munn, 16 N. J. Eq. 398; Campbell* v. *Campbell, 30 N. J. Eq.* 417; *Crowell* v. *Hospital of St. Barnabas, 27 N. J. Eq. 650; Higbie* v. *Morris, 53 N. J. Eq. 173; Hill* v. *Hill, 93 N. J. Eq. 567; affirmed, 95 N. J. Eq. 233.*

In the present situation the personal estate is admittedly insufficient to respond to such payment, and the question thereupon is whether the residuary real estate, after the personal estate has been exhausted, can be called upon to pay this mortgage.

The mortgage was placed by testator less than three months before his death; he personally received either the proceeds or the benefits of it; he has directed his executors to pay all his just debts and funeral expenses, and he has expressly

28

given them unlimited power of sale of his residuary real estate.

Complainant contends that from these circumstances and the intimate relation between the father and son, as well as from the difference in value between the property devised to complainant and that given and ˙devised to the widow and her two daughters, the court is warranted in finding an intention on the part of testator to charge the residuary real estate with the debt in exoneration of the mortgaged premises.

Defendants contend these circumstances do not justify the inference that testator intended this bond and moragage should be paid from his residuary estate, and claim that this is further shown by the fact that the will was drawn by a New York lawyer familiar with the real property law of that state, which, by section 250, provides, "that where real property, subject to a mortgage executed by  *  *  *  the testator  *  *  *  passes to a devisee  *  *  *  such devisee must satisfy the mortgage out of his own property  *  *  *  unless there be an express direction in the will that such mortgage be otherwise paid." Defendants also call attention to the fact that if the son pays the mortgage the equity devised to him is valued at $38,600, while the property devised to each of the daughters is only valued at $27,-500. Defendants further show that if this mortgage is not charged upon the residuary real estate, there will be sufficient funds realized therefrom to enable the executors to pay all testator's debts and funeral expenses and all specific legacies, including the amount due the widow under the antenuptial agreement and in settlement of her dower rights, and will leave a small surplus to be divided among the widow and the three children.

From these circumstances, and in view of the fact that the will appears to have been carefully drawn by a competent lawyer, I am unable to find any intention on the part of testator to charge this debt against his residuary real estate, in exoneration of the mortgaged premises.

This conclusion is also due to the fact that testator, although advanced in years, appears to have been a competent

business man, in the full use and possession of his faculties, which he apparently exercised in the preparation of his will, with due care, under the advice of competent counsel.

It cannot be assumed that testator had forgotten about this mortgage, which he had placed upon the Hoboken property only a few weeks before he devised it to his son. On the contrary, it is only reasonable to believe that his failure to mention or refer to it in his will was because he intended that his son should take this devise subject to the mortgage, for he had done exactly the same thing when he made a gift of the property on Eighth avenue in New York City to his wife, subject to the $20,000 mortgage thereon.

The cases cited, as I understand them, hold: That the general directions of a testator for the payment of his debts, even if coupled with an express power of sale of the residuary real estate, is not sufficient to charge against such residue a mortgage debt upon lands specifically devised, unless an intention to make such a charge is expressed in, or can be inferred from, the provisions of the will.

In the present situation I am unable to find such an intention.

This conclusion disposes of the second question submitted, for complainant's sole objection to the bequest made to the widow in settlement and discharge of the antenuptial agreement, and in lieu of her dower, is that its payment should be postponed until the mortgage upon the premises devised to him had been paid.

As I have found to the contrary, this objection cannot, of course, be sustained.

A decree will be advised in accordance with the views herein expressed.