The bill is by the widow of William A. Campbell who died testate in Atlantic City, New Jersey, on March 17th, 1946, and seeks a discovery as to the real estate owned by the decedent at the time of his death; the exoneration of the real estate from a mortgage lien, and an assignment of dower therein. The facts have been stipulated as follows:
"It is hereby stipulated by and between the solicitors for the respective parties that the above cause of action be submitted to the court for determination upon the following stipulated facts:
"1. Property Hotel Byron was acquired by William A. Campbell and Elizabeth Campbell, his wife, as tenants by the entirety, by deed dated February 18th, 1925, from Ella Fishburn.
"2. At the time of the acquisition of said Hotel Byron, said hotel property was subject to two mortgages, a first mortgage in the sum of $22,000 and a second mortgage in the sum of $43,000, making a total sum of $65,000.
"3. That in November, 1928, William A. Campbell and Elizabeth Campbell, his wife, entered into two contracts, with Victor Gondos, architect and builder, one for the installation of an elevator in the Hotel Byron, at a cost of $7,000 and the other for the construction of an addition to Hotel Byron at a cost of $39,000.
"4. To finance said improvements to the Hotel Byron, William A. Campbell and Elizabeth Campbell, his wife, procured *Page 146 
a loan from the Islanders Building and Loan Association in the sum of $95,000, which loan was evidenced by the joint and several bond and warrant of said William A. Campbell and Elizabeth Campbell, his wife, and secured by a real and chattel mortgage on the Hotel Byron, which mortgage bears date the 28th day of November, 1928.
"5. On the day of settlement, to wit, November 30th, 1928, Islanders Building and Loan Association, deposited with the Atlantic Guarantee Title and Insurance Company, the sum of $48,000, all of which, with the exception of $999.67, was used in the payment of the first and second mortgages then existing on the Hotel Byron, as aforesaid, together with interest thereon and such other charges as are customary in a title settlement.
"6. The balance of the proceeds of said mortgage, to wit, the sum of $47,000 was paid to said Victor Gondos, and the sub-contractors, as the improvements to the Hotel Byron, under the contracts as hereinabove mentioned were completed and architects' certificates produced therefor. That the full sum of $47,000, together with an additional sum of $3,000, was paid to the said Victor Gondos, for the completion of the improvements to Hotel Byron.
"7. Thereafter Elizabeth Campbell died and subsequently on or about the 27th day of April, 1938, complainant, Margaret V. Campbell, and William A. Campbell entered into the bond of matrimony. That complainant, Margaret V. Campbell, and William A. Campbell lived together for a period of approximately five months, at which time they separated, and were not living together at the time of the death of William A. Campbell on March 17th, 1946.
"8. At the time of his death, the said William A. Campbell left a last will and testament, in which, with the exception of a bequest of $5,000 to one Rose Campbell, he bequeathed all the rest, residue and remainder of his estate to his sons, Byron C. Campbell and William A. Campbell, Jr., equally, share and share alike. Said sons were also designated and later qualified, and are now acting as executors.
"9. At the date of death of William A. Campbell on March 17th, 1946, there was due and owing to Islanders Building *Page 147 
and Loan Association, under said bond and mortgage, the principal sum of $51,427.31, together with $257.13 interest, said mortgage being a direct reduction mortgage."
Although not stated in the stipulation, it appears from the pleadings that the property here involved is located in Atlantic City, New Jersey.
On behalf of the widow a right to exoneration from the existing mortgage is claimed on the authority of the common law rule that the personal estate is primarily liable for the debts of a decedent, and that the debt secured by this mortgage is decedent's personal debt which by his will he directs his executor to pay.
Counsel for the defendants, while admitting the common law rule, contend that it is not applicable to the facts of this case; that dower should be assigned only in the equity of redemption in this property over and above the amount of the original mortgages canceled at the time the present existing mortgage was placed, such mortgages aggregating $65,000; that the personal estate of the decedent was not enhanced by the present mortgage, but that on the contrary the value of the widow's dower was increased as a result of the expenditure of the mortgage moneys, over and above the amount due on the original mortgages, on improvements and additions to the property in which dower is asked to be assigned; and they further rely upon the equitable maxim that "he who seeks equity must do equity."
There is no doubt about the common law rule, or the fact that it has been adopted in this state. V Bacon's Abridgment tit."Mortgages" (E) (7th ed., 1832) 639; II Bacon's Abridgment,tit. "Dower" (K) (7th ed., 1832) 754; Hinchman v. Stiles,9 N.J. Eq. 361; Keene v. Munn, 16 N.J. Eq. 398; Campbell v.Campbell, 30 N.J. Eq. 415; Krueger v. Ferry, 41 N.J. Eq. 432;
affirmed, 43 N.J. Eq. 295; McLenahan v. McLenahan andJohnston, 18 N.J. Eq. 101; Burnet v. Burnet, 46 N.J. Eq. 144;Hill v. Hill, 93 N.J. Eq. 567; affirmed, 95 N.J. Eq. 233;Swetland v. Swetland, 100 N.J. Eq. 196; In re Staiger, 104 N.J. Eq. 149; Gerhardt v. Sullivan, 107 N.J. Eq. 374; Alt v.Kwiatek, 128 N.J. Eq. 469; 2 Jarman on Wills (5th ed.) 546,637. *Page 148 
In Krueger v. Perry, supra (at p. 437), the rule is stated as follows:
"It is undoubtedly true that the personal estate of a decedent is the primary fund for the payment of his debts, and that an heir-at-law, or devisee, or widow, has a right to call upon the administrator or executor of the decedent to exonerate his land from a mortgage debt existing thereon, for which the decedent is personally liable, by paying the same out of the personal estate, but this right belongs alone to the three classes of persons just mentioned."
The rule is no longer applicable to heirs and devisees as "The right to exoneration was abolished in this state in 1924 as to heirs and devisees (P.L. 1924, p. 375) but not as to widows."Gerhardt v. Sullivan, supra; R.S. 3:26A-1.
In McLenahan v. McLenahan, supra (at p. 103), Chancellor Zabriskie said:
"Although the personal estate is the primary fund for the payment of the debts of a decedent, the rule is limited to debts created by him, or for which he has rendered himself personally liable, directly and primarily. Where lands subject to a mortgage debt, not created by the decedent, descend or are devised, the heir or devisee takes them cum onere, and is not entitled to have the debt paid out of the personal estate, unless the decedent has directly assumed the debt, intending to make it a charge on his personal estate, or shall have so directed expressly by his will. It is not enough that he has assumed to pay the debt, or has rendered himself liable to be called on directly by the creditor to pay it.
"The authorities, ancient and modern, are uniform on these principles, although there is some difference as to what shallshow the intention to assume the mortgage debt as a primary lienon the purchaser and his personal estate." (Italics mine.)
In Gerhardt v. Sullivan, supra (at p. 376), Vice-Chancellor Backes stated the rule and the underlying reasons therefor as follows:
"The right of the widow to call upon the personal estate to clear the land of encumbrances given to secure the husband's debts, in favor of her dower, rests upon the rule that *Page 149 the personal estate is the primary fund out of which his debtsare to be paid and out of which it is presumed he intended theyshould be paid, and on the ground that the husband's personalestate was enhanced by the proceeds from the encumbrance put onthe land. The rule, originally evolved to the advantage of the heir at law, and extended to widows, comprehends the debts of the husband whether incurred and secured by his land before or after marriage." (Italics mine.)
Note that in this statement it is: (1) the husband's debts which are to be paid out of the personal estate; and, (2) that it is "presumed he intended they should be paid" out of the personal estate; and, (3) that the husband's personal estate was enhanced by the proceeds from the mortgage encumbrances.
In 2 Jarman on Wills (5th ed.) 637, the scope of the rule is stated as follows:
"The principle * * * extends only to incumbrances created by the testator or ancestor himself; for the claim to exoneration is founded on the notion that the personal estate of the testator who made the mortgage had the benefit of its creation, and therefore shall be the fund to liquidate it; and cases which donot fall within the reason are excluded from the operation of therule. Thus it is clear that where the estate has come to the last owner, either by devise or descent, incumbered by a mortgage, and he has done no act in his lifetime evincing anintention to make the debt his own, the personal estate (nothaving had the benefit of the mortgage) will not be liable to pay it; but the devisee or heir of the last owner will take the estate cum onere; nor, it seems, will the act of the last owner, rendering himself personally liable to the debt, (even though he be also residuary legatee of the first mortgagor's personal estate,) in every instance transfer it to himself as between his own representatives, unless such appears upon the whole transaction to have been his deliberate intention."
(Italics mine.)
That the question of exoneration, where the personal estate has not been enhanced by the proceeds of the mortgage is largely a question of intention, is indicated by this statement and, also, by the following authorities: Gerhardt v. Sullivan, supra;Campbell v. Campbell, supra; McLenahan v. McLenahan, supra;Duke of Cumberland v. Codrington, 3 Johns. Ch. Rep. 229; Cadoo
v. Cadoo, 95 N.J. Eq. 430; Mount v. Van Ness, 33 N.J. Eq. 262;Higbie v. Morris, 53 N.J. Eq. 173. *Page 150 
In Campbell v. Campbell, supra (at p. 417), Chancellor Runyon said:
"The weight of authority, both in this country and in England, is, that the personal estate is not primarily liable, unless the grantee has not merely made himself answerable for the payment of the mortgage, but has made the debt directly and absolutely hisown, or has in some other way manifested an intention to throwthe burden on the personalty." (Italics mine.)
In Duke of Cumberland v. Codrington, supra, Chancellor Kent (at p. 262), said that "There must be a direct communication and contract with the mortgagee; and even that is not enough, unless the dealing with the mortgagee be of such a nature as to afford decided evidence of an intention to shift the primaryobligation from the real to the personal fund," and that the intention to subject personal estate to the charge must be clearly proved. Chancellor Kent was there speaking of a mortgage debt subject to which title to the lands was conveyed; but the statement is pertinent because the mortgage here involved took the place of, pro tanto, the previous mortgages and, at its inception, was "not the sole and single obligation(s) and undertaking(s) of the husband, * * * but the joint and several obligation(s) of him and his wife." In re Staiger, supra. See, also, 5 Bacon's Abridgment 648.
In England until the Statute 3d and 4th William IV, chapter 105, a widow was not dowable of an equity of redemption because such right of redemption was considered a mere equitable title.1 Scribner on Dower 465. And in Montgomery v. Bruere,4 N.J. Law 300, it was held that the dower law of New Jersey (Paterson's Laws 343 ¶ 1) left the right as it stood at common law, altered by the Statute 27th Henry VIII and, consequently, that dower could not be had of equities of redemption. But this decision was reversed by the Court of Errors and Appeals (5 N.J. Law 1019), which court held that a widow is dowable of an equity of redemption whether the mortgage be made before or after marriage. And there is respectable authority to the effect that where at the time of marriage the husband's lands are already subject to *Page 151 
a mortgage executed by him, the widow is dowable, at law, only of the equity of redemption. In Burnet v. Burnet, supra (at p.148), Vice-Chancellor Pitney said:
"* * * the course of the decisions in New York, as well as in this state, without an exception so far as I am able to find, limit the right to the equity of redemption, and give the widow her dower, subject to such mortgages as were upon the property when her husband acquired title or when she married him, or in the execution of which she joined with him and which remained unpaid at his death. The extent of her dower seems to have been determined and her rights fixed by the situation at his death. The courts of equity, however, extended to the widow the right accorded to the heir to have the mortgage encumbrance paid out of the personal assets so far as they were sufficient for that purpose, and to that extent relieved her dower right of the burden of the mortgage."
This rule is also applied in equity where the circumstances warrant. In the Burnet Case the question was whether the widow, upon sale of mortgaged property for the payment of debts pursuant to a direction in the testator's will, was dowable of the entire proceeds of sale or only of the surplus after payment of the amount due on the mortgage. It was held that she was dowable only of the surplus because, as stated by Vice-Chancellor Pitney (atp. 157):
"The mortgages were, in effect, paid by the proceeds of the sale of the very lands they covered, and in such case, in my judgment, an equity exists in favor of the heir against the widow to have her dower confined to the surplus, * * *."
It seems to me that there is a strong analogy here to the circumstances there considered. Here the original mortgages were paid by the proceeds of the new mortgage. The effect, in so far as dower is concerned, was the same as though the property had been sold. But this case is stronger for the heir or devisee than that, for here the mortgage debt which was paid was never the debt of complainant's husband. See, also, Thompson v. Boyd,21 N.J. Law 58; affirmed, 22 N.J. Law 543; Hartshorne v.Hartshorne, 2 N.J. Eq. 349; Hinchman v. Stiles, supra; Wait'sEx'r v. Savage, 15 Atl. *Page 152 Rep. 225; and numerous cases cited in the footnote toMontgomery v. Bruere, 5 N.J. Law 1019; Collins v. Torry, 7Johns. 278, 282; House v. House, 10 Paige's Ch. 158; Evertson
v. Tappen, 5 Johns. Ch. 497; 1 Scribner on Dower, 519 et seq.
The widow's right of exoneration arising from an extension by courts of equity of "the right accorded to the heir" (Burnet v.Burnet, supra), on an application in equity for an assignment of dower equities are weighed and equitable principles applied.
It is in the light of these authorities and decisions that the rights of the parties to this controversy must be tested. It is clear, I think, that the underlying reason for the common law rule of exoneration as applied to the widow's dower is, that the personal estate of the deceased mortgagor was enhanced by, and had the benefit of, the money proceeds of the mortgage. It was flatly so held by the Court of Errors and Appeals in In reStaiger, supra. It was also there held that, where the debt secured by the mortgage is not the "sole and single" obligation of the husband, "to exact an exoneration under such conditions would deprive the rule of common law relied upon, * * * of all its equity and take from it the reason for its existence."
It is equally true, I think, that when the reason for a rule of law ceases to exist the rule itself will fall or its application be suspended. Young v. Weber, 117 N.J. Eq. 242, 245. In 2Jarman on Wills 637, quoted supra, this proposition is stated in this fashion: "Cases which do not fall within the reason are excluded from the operation of the rule."
A careful perusal of the stipulation of facts hereinabove recited will show clearly, I think, that the property here involved was conveyed to the decedent and his first wife as tenants by the entirety, subject to mortgages aggregating $65,000. Had testator pre-deceased his first wife, she would, of course, have succeeded to the title to this property subject to those mortgages, and would not have been entitled to exoneration.Campbell v. Campbell, supra. Also, if these mortgages had remained in existence until the date of his death, his second wife, the complainant, would not have been *Page 153 
entitled to exoneration. Ibid. Also, that had the testator pre-deceased his first wife after the execution of the presentexisting mortgage, she would not have been entitled to exoneration. In re Staiger, supra. Nor can it be claimed that the husband's personal estate was at all enhanced or benefited as a result of the present mortgage. It is stipulated that $47,000 of the proceeds of this mortgage was applied to the payment of the balance then due on the pre-existing mortgages, and that the entire balance of the proceeds, plus some $3,000, was expended on improvements and additions to the property itself, thereby increasing its value and the value of the widow's dower therein. It was the real property, not the personal estate, of the decedent which had the benefit of this mortgage, and the value of which was enhanced. If any right of exoneration qua this mortgage exists, it arose at its inception. No such right arose then because the mortgage was not given to secure "the sole and single" debt of the husband (In re Staiger, supra), and there are no facts in this case which would justify a presumption that the decedent intended that the mortgage should be paid out of his personal estate. On the contrary, the fact that the complainant and the decedent resided together for only about five months after their marriage and thereafter remained separated until his death, and the fact that he ignored her when he made his will in 1943, tend to rebut any such presumption. His direction for the payment of his debts, as contained in the first paragraph of his will, does not evince such an intention. Cadoo v. Cadoo,supra; Commonwealth-Merchants Trust Co. v. Seglie, 127 N.J. Eq. 160; Swetland v. Swetland, supra.
If a third mortgage had been given for the $50,000 spent on additions and improvements to this property, no question of exoneration with respect to the pre-existing mortgages could have arisen. Of course, the building and loan association, the present mortgagee, could not legally advance the money on a third mortgage, and that, undoubtedly, is why a first mortgage in an amount sufficient to satisfy the first and second mortgages, and to pay for the contemplated improvements, was made. In substance, the transaction was the same *Page 154 
as though the first and second mortgages had remained in force, and a third mortgage for $47,000 had been given. Equity looks at the substance and not the form.
The circumstances of this case present a strong analogy to a purchase of land subject to a mortgage which is taken as part of the purchase price. In Duke of Cumberland v. Codrington,supra (at p. 257), Chancellor Kent said:
"When a man gives a bond and mortgage for a debt of his own contracting, the mortgage is understood to be merely a collateral security for the personal obligation. But when a man purchases, or has devised to him, land with an incumbrance on it, he becomes a debtor only in respect to the land; and if he promises to pay it, it is a promise rather on account of the land, which continues, notwithstanding, in many cases, to be the primary fund. The same equity which in other cases makes the personalestate contribute to ease the land, as between the real andpersonal representatives, will here make the land relieve thepersonal estates. There is good sense and justice in the principle; and I feel the force of the doctrine, that it requires very strong and decided proof of intention, before the court can undertake to shift the natural course and order of obligation between the two estates."
And (at p. 272):
"* * * in order to charge his personal estate as the primary fund, he must make himself, by contract, personally and directly liable at law for the debt to the owner of the incumbrance; and even a covenant or bond for the purpose will not be sufficient, unless accompanied with circumstances showing a decidedintention to make thereby the debt personally his own."
(Italics mine.)
It is argued by counsel for the complainant that when the present mortgage was executed the testator assumed the debt it was given to secure by executing a bond to the mortgagee, and that therefore it was his debt, represented by his bond, the payment of which was secured by the mortgage. But that is not so. The bond was given by him and his wife — tenants by the entirety of the land — and it was not his "sole and single" obligation, and not, therefore, within the rule. In re Staiger, supra. Nor was it the "sole and single" obligation *Page 155 
of his then wife, but a joint and several obligation to which the common law rule does not apply. Ibid.
I think this is a case where equity should step in to insure justice to the heirs or devisees of the residuary estate. The value of the widow's dower in the premises having been substantially increased by the expenditure of $50,000 in improvements to the property, I think a grave injustice would be done to the heirs and devisees to exonerate the lands from the amount of the original mortgages ($47,000) and thus further enlarge her interest. Burnet v. Burnet, supra. The complainant is seeking equity and must do equity. The quoted maxim is not limited to any particular class of cases but will be applied whenever necessary to promote justice. Mutual BenefitLife Insurance Co. v. Brown, 30 N.J. Eq. 193; Patsourakos v.Kolioutos, 132 N.J. Eq. 87; affirmed, 133 N.J. Eq. 37.
In Alt v. Kwiatek, supra (at p. 471), Vice-Chancellor Bigelow said: "dower and curtesy have their inception not in the seizin alone but in seizin coupled with coverture." To the same effect is the text in 2 Bacon's Abridgment 754. If Vice-Chancellor Bigelow's statement is correct, and I believe it is, it is pertinent to inquire how a widow can be endowed of any estate larger than the husband had at the date of marriage. I realize, as did Vice-Chancellor Bigelow, that the decision of this court in Gerhardt v. Sullivan, supra, controls, but I agree with him that, "It might be argued plausibly that when the legislature declared the land to be the primary fund for the payment of the mortgage debt, the widow's right of exoneration fell; and again that when in 1924 the legislature expressly abolished the right of heirs and devisees to look to the personalty, then the extension of that right to the widow was impliedly annulled." The legislation to which he there referred was R.S. 2:65-2 and its antecedents. In Montclair SavingsBank v. Sylvester, 122 N.J. Eq. 518 (at p. 521), the Court of Errors and Appeals, speaking through Mr. Justice Heher, held that, "by force of the statute, the mortgaged premises are primarily answerable for the debt so secured." To the same effect is Fidelity Union Trust Co. v. Gottlieb, 125 N.J. Eq. 152. *Page 156 
It is alleged in the bill, but not admitted by the answer, that the present existing mortgage also covers certain furnishings and personal property contained in the property Hotel Byron. A copy of that mortgage was submitted to me on the oral argument and an inspection of that copy shows this allegation to be true. I deem it of little importance, however, as the mortgage provides for insurance of $85,000 on the hotel and only $10,000 on the furniture, thus indicating the relative values of land and personalty. In view of these facts an apportionment of the unpaid balance of the mortgage will be necessary.
I conclude that the complainant widow is not entitled to exoneration from the whole mortgage but that her dower should be calculated upon the value of the mortgaged premises in excess of $47,000, the amount of the first and second mortgages which was paid out of the proceeds of the present existing mortgage (not $65,000 as claimed by the defendant). She is entitled to exoneration for the amount due on the existing mortgage at the date of the husband's death in excess of $47,000, and I will advise a decree accordingly. There will be a reference to a master to fix the value of the widow's dower and he will report also on the apportionment between real and personal estate as above suggested. *Page 157