In the Matter of the Judicial Settlement of the Account of
FRANK H. MCKINNON, as Administrator, etc., of JAMES
R. BAUMES, Deceased.

FRANK H. MCKINNON, Individually and as Administrator,
Respondent; JULIUS E. HALL, as Administrator, etc., of
ROBERT CARTWRIGHT, Deceased, Appellant.

Third Department, March 6, 1918.

Executors and administrators — accounting by administrator —
rights of husband in wife's property — payment of mortgage from
property of heir — allowance of claims — negligence — burden
of proof — gift inter vivos — presumption as to ownership of
stock dividend — right of creditor to inspect books of account
of deceased — inventory — sufficiency where property not inspected
by appraisers.

Upon the final accounting of an administrator, a claim that a daughter,
being the sole next of kin of her mother, inherited all her property,
overlooks the fact that the husband became vested with one-third of the
property in addition to his statutory exemption, and, hence, such items
are applicable to increasing his estate instead of diminishing it.

A daughter and sole heir at law having acquired title to mortgaged land
by descent, is not entitled to have the mortgage paid from the personal
estate of the decedent, but must satisfy the same out of her own property,
without resorting to the administrator, the land being adequate for
such purpose.

It was error for the surrogate under the evidence to allow payments to the
daughter of the decedent upon the ground that an act of the administrator
in producing and filing a voucher showing such payment cast upon the
objecting creditor the duty of showing that the claim was fraudulent or
negligently allowed and paid, which proof was not furnished.

A finding of the surrogate that household furniture of the decedent was
given to his daughter is unjustified, where no written transfer was pro-
duced, no change of possession shown, and it appears that he caused
the furniture to be insured in his own name and gave his check in payment
of the premium.

Shares of stock standing in the name of a decedent at the time of the
declaration of a dividend should be presumed, in the absence of specific
proof to the contrary, to have continued the property of the estate.

A creditor of an estate is entitled to full information as to collections made
by the administrator who should be required to produce the books of
account of the decedent, in accordance with a notice served during the
hearings.

An inventory made upon an inspection of the property by the appraisers and otherwise following the requirements of the statute, is on an account-ing *prima facie* evidence as to the amount of the personal property of the decedent. But where it is made in utter disregard of the statute, without an inspection by the appraisers, it should not be held to relieve the administrator from the burden resting upon him, where he has wholly neglected to file an inventory.

APPEAL by Julius E. Hall, as administrator, from a decree of the Surrogate's Court of the county of Delaware, entered in the office of said Surrogate's Court on the 23d day of October, 1916, settling the accounts herein.

*William Thorp* [*E. D. Wagner* of counsel], for the appellant.

*Herbert C. Kibbe* and *Andrus & McNaught* [*Andrew J. McNaught, Jr.*, of counsel], for the respondent.

LYON, J.:

This appeal is based upon a decree rendered upon the final accounting of the respondent by the Surrogate's Court of Delaware county. The grievance of the appellant is the refusal of the acting surrogate to surcharge the account of the respondent as to certain items of alleged disbursement, and with certain income and property which the appellant claims belonged to the estate, but was not included by the respondent in his account. The respondent's intestate, James R. Baumes, died at Sidney, N. Y., in August, 1908. The respondent was appointed administrator of his estate September 8, 1908. Appraisers of the estate were appointed at the same time. Publication of notice to creditors to present claims was commenced on or about September 10, 1908. Appellant's intestate, Robert Cartwright, presented his claim, arising on contract, January 4, 1910. The claim was rejected in February, and an action to establish the claim was commenced in March, 1910. The trial resulted in a judgment in favor of the claimant for $1,899.72, entered in Delaware county October 14, 1912. This judgment was affirmed by this court (*Cartwright* v. *McKinnon*, 159 App. Div. 927), and in February, 1915, by the Court of Appeals (*Cartwright* v. *McKinnon*, 214 N. Y. 631). In June, 1915, proceedings were instituted by said Cartwright in the Surrogate's Court

of Delaware county to compel a judicial settlement by the respondent of his accounts as such administrator. On July 26, 1915, the appraisers appointed in September, 1908, took the oath required by law, and signed and verified an alleged inventory. The respondent filed such inventory, together with his account as administrator and his petition for an accounting, in said surrogate's office September 8, 1915. In said account the respondent charged himself with $18,745.96, as representing all the assets of the estate, and credited himself with approximately $27,000 as paid out by him, $23,660.35 of which he claimed had been paid upon the debts of his intestate, and about $3,400 for funeral and other necessary expenses. Thus, his account showed disbursements made by him in excess of the assets of the estate of about $8,300. Objections to said account having been filed by said Cartwright, and the surrogate being disqualified, the matter came for hearing before the acting surrogate who on October 23, 1916, made the decree appealed from, judicially settling and allowing the account, but surcharging it, and disallowing items thereof aggregating $5,695, as to which portion of the decree no appeal has been taken. The result is still an · alleged deficit of the estate of $3,604.57 (inadvertently stated as $2,604.57), not including the Cartwright judgment, and another claim of the same nature and amount to the allowance of which a defense and counterclaim have been interposed. The respondent testified that these two claims constituted all the unpaid claims against the estate. Said Cartwright having died October 27, 1916, Julius E. Hall was appointed administrator of his estate, substituted as a party to the proceeding, and took the appeal now before the court.

The three principal matters allowed by the acting surrogate, of which the appellant complains, relate to the dealings of the respondent with his wife, Mary L. McKinnon, who was the daughter and sole heir at law of said James R. Baumes, deceased. These three matters are, the payment by the respondent to his wife of $4,061.75; his failure to account for the household property of the deceased, and his refusal to include as a part of the property of the estate $3,000 of Sidney Water Company dividend bonds.

As to the payment of $4,061.75 to Mrs. McKinnon, the

respondent explains that such sum was made up of three items:
(1) The principal and interest of a bond and mortgage of
$1,100 which in 1890 had been given by James R. Baumes
and Frank H. McKinnon to one Parsons, and in the same
year assigned to Sarah L. Baumes, the wife of James R. Baumes
and the mother of Mary L. McKinnon, the wife of the
respondent, which bond and mortgage it was claimed amounted
at one time, the precise date not appearing, to $1,958; (2)
$635, with the interest thereon, being an indebtedness of
James R. Baumes as administrator of the estate of Sarah
L. Baumes to said estate, these two claims aggregating July
1, 1909, $2,745.42; and (3) an indebtedness of $1,316.33,
as the amount, principal and interest, of a note claimed to
be owned by Mrs. McKinnon upon which James R. Baumes
was liable.

Sarah L. Baumes died intestate in 1902, and it is claimed
that Mrs. McKinnon being the sole next of kin of her mother
inherited all her property. This claim overlooks the fact
that James R. Baumes as the husband of Sarah L. Baumes
became vested, in addition to the statutory exemption as
husband, with one-third of his wife's property, and hence that
such exemption and third were applicable to increasing his
estate instead of diminishing it. Furthermore, James R.
Baumes died seized and possessed of the real estate covered
by the Parsons mortgage, and Mary L. McKinnon, as his
sole heir at law having acquired the title to such land by
descent, was not entitled to have the mortgage paid from the
personal estate of James R. Baumes, but was required to
satisfy the same out of her own property without resorting
to the administrator. (Real Prop. Law, § 250.) The
adequacy of the land for that purpose was not questioned.
In 1910 Mary L. McKinnon assumed to satisfy the mortgage
as sole heir at law and next of kin of Sarah L. Baumes deceased.
The note representing the alleged indebtedness of $1,316.33
was that of the Monarch Knitting Company for $934.04 of
date March 11, 1902, payable on demand to the order of
James R. Baumes and indorsed by him. Upon it was written
" Dec. 20, 1906. Rec'd on the within, ten dollars." By
whom the alleged payment or indorsement was made, appar-
ently for the purpose of relieving the note from the defense

of the Statute of Limitations, was not shown. Nothing upon the note indicated that it was ever protested, and there was no evidence offered establishing any liability of James R. Baumes thereon. It appears that no verified claim on account of this alleged indebtedness of $4,061.75 was ever presented by Mary L. McKinnon. Upon the hearing before the acting surrogate the respondent produced a receipt signed by her of date July 1, 1909, reciting the receipt by her from him as such administrator of $2,745.42 (the total of the first two items), " being the amount due from deceased from the estate of Sarah L. Baumes; also $1,316.33 being liability on note, in all $4,061.75." In 1905 James R. Baumes, who had been for many years a practicing attorney, and who had been a former surrogate of Delaware county, verified and filed a petition to the Surrogate's Court asking a decree awarding to him letters of administration upon the estate of Sarah L. Baumes. In such petition he stated that as he was informed and believed, the value of the personal property of the decedent did not exceed $600. The decision of the acting surrogate allowing the payment of these sums aggregating $4,061.75 as proper was placed upon the ground that the act of the administrator in having produced and filed a voucher showing the payment thereof to Mrs. McKinnon, cast upon the objecting creditor the duty of showing that the claim was fraudulent or negligently allowed and paid, which proof the objecting creditor had failed to furnish. In this we think the acting surrogate erred, and that clearly under the evidence the payments should have been disallowed.

As to the finding of the acting surrogate that the respondent should not be required to account for the household furniture of the deceased, as it was given to Mrs. McKinnon by James R. Baumes, it appears that soon after the death of Sarah L. Baumes in 1902, the respondent and his wife went to live with James R. Baumes in his house. No written transfer of the household furniture was produced, no change of possession shown, and the evidence given was insufficient to establish the alleged gift. In contradiction it appears that in 1906 James R. Baumes caused the household furniture to be insured in his own name for $1,000 and gave his check in payment of the premium. We think the finding of the acting surrogate

Third Department, March, 1918. [Vol. 182.

that the household furniture was a gift from James R. Baumes to Mrs. McKinnon was not justified.

As to the refusal of the acting surrogate to require the respondent to account for $3,000 of dividend bonds of the Sidney Water Works Company, it appeared from the account as well as by the testimony of the witness Siver, that the deceased at the time of his death was the owner of $9,000, or ninety shares, of the capital stock of that company. The stock was accounted for at $6,750, but the acting surrogate held that its value was $9,000 and surcharged the account of the respondent with $2,250. The stock appears to have paid regular dividends, and in April, 1911, its financial condition had become so favorable that it declared a bond dividend of fifty per cent upon its stock, and paid the same August first of that year. These bonds were concededly worth par. The respondent testified that prior to the declaration of the stock dividend, he transferred to his wife thirty shares of the stock. The remaining sixty shares were not transferred on the books of the company until April, 1912. These shares standing in the name of James R. Baumes at the time the stock dividend was declared should be presumed in the absence of satisfactory proof to the contrary, which was not produced, to have continued the property of the estate. The respondent should, therefore, have been required to account for such $3,000 of the dividend bonds.

The appellant also complains of the failure of the respondent to produce the books of account of the deceased, in accordance with a notice served during the hearings. The inventory contained the item "Book accounts aggregating $3,614.24, $2,500." In his account the respondent charged himself "Book accounts $2,500." Upon the hearings the respondent while being examined on behalf of the appellant as to the collections which he had made of the book accounts, testified that he did not know just where the books were then, nor where he put them last, nor whether he could find them or not; that he did not know whether they were lost or not; that he would not say that he did or that he did not keep any record of the amounts collected, but had some record but not the full record, but did not know whether it was lost nor where it was the last time he saw it. The respondent

also testified he kept no book account between himself and the estate, and that he told one of the appraisers that the amount collected was nearer $2,500 than $3,000. The appellant as a creditor of the estate was entitled to full information as to the collections made by the respondent, who should have been required to produce the books of account.

Neither the inventory nor the account filed by the respondent gave the appellant the information he was entitled to have given him. Both were unsatisfactory. As before stated, the inventory was not made until July, 1915, nearly seven years after the appraisers had been appointed. The appraisers then met at the house of the respondent where they were handed the proposed inventory which consisted of typewritten sheets prepared by the respondent or his attorney containing items of personal property with values set opposite them. Each appraiser took the oath of office to the effect that he would truly, honestly and impartially appraise the property exhibited to him, and also signed the inventory which contained a certificate that he had so done. Concededly, none of the property mentioned in the inventory was then exhibited to the appraisers. One of the appraisers testified that he had seen some of the articles mentioned in the inventory, and the other appraiser testified that he had never seen any of them. The inventory and account were filed together September 8, 1915. Not an item in either contained a date even as to the year. The record indicates that the respondent turned over practically all the property to his wife, and as he testifies at the prices contained in the inventory. In his account he places all the property under subdivision 3 of Schedule A, " A statement of all the property contained in said inventory, sold by him at private sale with the prices obtained therefor." While an inventory made upon an inspection of the property by the appraisers and otherwise following the requirements of the statute, is, on an accounting, *prima facie* evidence as to the amount of the personal property of a decedent (*Matter of Mullon*, 145 N. Y. 98; *Matter of Rogers*, 153 id. 316), the inventory in question made in utter disregard of the statutory requirements should not be held to relieve the respondent from the burden resting upon an administrator who has wholly neglected to file an inventory.

We think the findings of the acting surrogate in crediting the respondent with the payment of the item of $4,061.75, and in refusing to charge the respondent with $3,000 and interest thereon from August 1, 1911, and with the value of the household furniture of which no reliable proof of value appears, were contrary to the evidence, and that the decree appealed from should be reversed and a new trial granted. While other objections are raised by the appellant, we do not consider them material in view of our decision as to the three principal matters involved, and as they may not arise upon a retrial we have not discussed them.

All concurred.

Decree so far as appealed from reversed on law and facts and new trial granted, with costs to appellant to abide event. The court disapproves of the seventh, tenth, eleventh and thirteenth findings of fact.