This bill is filed by the executors and trustees of the will of Horace M. Swetland, and seeks the construction of the will and instructions with reference to the duties of complainants thereunder. The testator died June 15th, 1924. His will is dated January 12th, 1922. For a complete understanding of the issues raised in this suit, it is necessary to quote the will in full. The following is a copy of the will, and for convenience of reference I have arbitrarily given the several paragraphs marginal numbers.
1. "I, Horace M. Swetland, of the township of Verona, county of Essex, State of New Jersey, do hereby make, publish and declare this my last will and testament, in manner and form following:
2. "First: I direct that all my just debts and funeral expenses be paid, except business obligations, which may be carried at the discretion of my executors.
3. "Second: I direct that all transfer, inheritance or succession taxes upon the foregoing devises and bequests shall be paid by my executors from my residuary estate.
4. "Third: All of my estate, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, I give, devise and bequeath to my executors, hereinafter named, in trust nevertheless, and for the following uses and purposes, and subject to the terms, conditions, powers and agreements as herein provided:
5. "(A) To have and to hold and possess the same, to collect the rents, issues and income and the profits thereof, and to pay from the net income therefrom the following amounts:
6. "1. To deliver and pay over to my half-sister, Hattie Swetland, if she shall survive me, the sum of twelve hundred dollars [$1,200] each year, during her life, in semi-annual installments of six hundred dollars [$600] each, and I direct my executors to make the first of such payments immediately after my decease.
7. "It is my will, and I direct my trustees in the exercise of their absolute discretion, to increase as they may consider necessary, the amount to be paid to said Hattie Swetland, if any misfortune should befall her whereby her necessities should require the payment of a larger sum.
8. "It is my will, and I direct my trustees, upon the death of my wife, or if she should have predeceased me and I am survived by said *Page 199 
Hattie Swetland, to immediately distribute the principal of the trust hereby created and as herein provided, except such amount of cash or assets as they shall set aside and retain as sufficient to insure the return of an annual net income of not less than twelve hundred dollars [$1,200] to be used and applied as above provided for the benefit of said Hattie Swetland.
9. "It is my will, and I direct that if my trustees shall set aside and retain assets sufficient for the purpose specified in the next preceding paragraph hereof, and in the event the necessities of said Hattie Swetland should require the payment of a greater annual amount than herein provided, that they shall have the power and authority to pay over or apply any part of, and if necessary all of, the principal so set aside for the aforesaid purposes for her comfort, care and maintenance, as in the exercise of their absolute discretion my trustees may consider necessary or advisable.
10. "Upon the decease of said Hattie Swetland, and in the event that a separate fund shall have been established for her benefit as herein provided, I direct my trustees to distribute the principal of said fund or the remainder thereof and all additions thereto, if any, in the same manner as hereinafter provided for the final distribution of my residuary estate.
11. "2. To deliver and pay over to my wife, Clara A. Swetland, the sum of fifteen thousand dollars [$15,000] per year during her life, in equal monthly payments, the first of which shall be paid by my executors immediately after my decease.
12. "The provisions herein contained for the benefit of my wife, I hereby declare are intended to be and are so given to her in full satisfaction and in lieu of and for her dower and thirds, which she may or can in anywise claim or demand out of my estate.
13. "It is my will, and I direct my trustees in the exercise of their absolute discretion to increase, as they may consider necessary or advisable, the amount to be annually paid to my said wife, if any misfortune should befall her whereby it should become necessary to provide for her competent and comfortable support and maintenance.
14. "It is my will, and I direct that my trustees shall permit my said wife to have the use of, and to occupy free of rent or other charges, except as herein specifically otherwise provided, my dwelling house and the grounds attached thereto situated in the township of Verona, town of Montclair, county of Essex, State of New Jersey, and all the furniture and articles of use and ornament of every kind and nature therein contained at the time of my decease, together with all personal property and equipment located upon said premises during the term of her life.
15. "It is my will, and I direct my trustees to pay and discharge during the life of my wife, all taxes, assessments, insurance charges and charges of every kind and nature except as herein otherwise specifically provided, which may be imposed upon any of the lands and premises used and occupied by my wife, as herein provided, from the income received by them from the principal of the trust herein created, except that my said wife shall personally pay for all repairs to and improvements upon the said property while used and occupied *Page 200 
by her, and that in the event of her failure so to do, and if it shall become necessary for the proper maintenance and protection of said property, and premises, I authorize and empower my said trustees to make such repairs or improvements thereon as they, in the exercise of their absolute discretion, may consider proper and necessary, and to charge the cost thereof to the trust account.
16. "Upon the death of my wife, Clara A. Swetland, if she shall have survived me, I direct my trustees, subject to the provisions herein contained for the benefit of my half-sister, Hattie Swetland, to distribute the remainder of the principal of the trust herein created, and upon the death of the said Hattie Swetland, if she shall have survived me, to distribute the principal of the trust held for her benefit, by dividing the principal of said trust or trusts, as the case may be, equally among my daughters, Mrs. Velma I. Stevens, Mrs. Ruth D. Kane and Dorothy A. Johnson, and my son, Maurice J. Swetland, as trustee, or his successor trustee. The bequest to Maurice J. Swetland, trustee, is made under the trust agreement heretofore mentioned and created by me under date of July 14, 1917, for the purposes herein provided.
17. "In the event that any of my said daughters shall predecease me or my wife, Clara A. Swetland, leaving lawful issue her and me surviving, then and in that event such issue shall take per stirpes and not per capita, the share its parent would have taken under this will had such parent survived me and my wife, Clara A. Swetland; in the event that any of my said daughters shall have predeceased me or my wife, Clara A. Swetland, leaving no lawful issue her or me surviving, the share such child of mine would have received under the provisions hereof shall be equally distributed among my surviving daughters or their issue, as herein provided, and Maurice J. Swetland, as trustee, or his successor trustee, under the trust agreement heretofore mentioned and created by me under date of July 14, 1917, for the purpose therein provided.
18. "B. Except as hereinbefore otherwise provided, I direct and empower my trustees, in the exercise of their absolute discretion, to sell either at public or private sale, and at such times and in such manner and upon such terms and conditions as may be deemed most advantageous and for the best interest of my estate, the whole or any part of the real estate of which I may die seized or possessed, or any interest therein, and to execute and deliver any and all conveyances, deeds or other instruments that may be necessary or proper to transfer said property or to carry out the intention of this provision.
19. "It is my will, and I hereby expressly direct that my executors and trustees, in their absolute and uncontrolled discretion, may retain for such period as they shall see fit, any investments of any nature or kind made by me in my lifetime, and that no liability shall attach to them by reason of any loss occasioned to my estate by reason of so doing. It is also my will, and I hereby direct that the trustees of the trusts created by this will may accept from my said executors and may retain for such period as they deem wise, any securities or property in which I may have invested my estate in my lifetime, even if such securities and investments are not of a character *Page 201 
in which fiduciaries are authorized to invest trust funds, and that no liability shall attach to such trustees by reason of any loss occasioned by such acceptance or retention.
20. "I also expressly authorize and empower the trustees of the trusts hereby created in their absolute discretion to invest and re-invest the properties which may come into their hands in such manner as they may deem most advisable, and with regard to the question whether such investments or re-investments so made by them are of a character permitted by law to fiduciaries, and I direct that no liability shall attach to said trustees by reason of any investments or re-investments so made by them.
21. "I expressly authorize my executors and trustees of the trusts hereby created, at any time to sell, assign and transfer any stocks or bonds or other securities in which my estate or any of the trust funds hereby created may at any time be invested.
22. "Fourth: I hereby nominate, constitute and appoint my son, Maurice J. Swetland; E.M. Corey, F.C. Stevens and M.J. Kane, as executors and trustees of this, my will, I direct that no bond or other security shall be required from my executors or trustees herein named under any circumstances or in any event.
23. "In case of the death or resignation or inability to act of any one of the executors and trustees above named, the three remaining executors and trustees shall act without the appointment of a fourth, but thereafter, in the event of the death or disqualification of any of the remaining executors or trustees, I nominate and appoint as substituted executor and trustee, in the place of Maurice J. Swetland, Emerson P. Harris, and as substituted executor and trustee in the place of F.C. Stevens, I nominate, constitute and appoint my daughter, Mrs. Velma I. Stevens; and as substituted executor and trustee in the place of M.J. Kane, I nominate, constitute my daughter, Mrs. Ruth D. Kane; and as substituted executor and trustee in the place of E.M. Corey, I nominate, constitute and appoint Emerson P. Harris.
24. "All powers conferred by this will upon my executors or upon my trustees may be exercised by such of them as shall qualify or assume the execution of said trustees and by the survivors or survivor of them, and by their lawful and qualified successors.
25. "Wherever in the foregoing provisions hereof, I have vested or authorized my executors or trustees to exercise their discretion in any matter, it is my will and I direct that in all matters pertaining to the administration of my estate and the trusts herein created, that the will of the majority of my then qualified and active executors and trustees shall be binding and final upon the remainder of them on all such questions.
26. "Lastly: I hereby cancel, annul and revoke all wills and testamentary dispositions by me heretofore made.
27. "In witness whereof, I have hereto attached my hand and seal in the presence of my subscribing witnesses, this 12th day of January, 1922.
"HORACE M. SWETLAND." *Page 202 
I deem it also necessary to a complete understanding of the issues here presented to quote in full the trust agreement referred to in paragraphs 16 and 17 of said will. That agreement is as follows:
"Whereas heretofore and on the 25th day of September, 1916, Horace M. Swetland, of Montclair, New Jersey, delivered to the undersigned five hundred [500] shares United Publishers Corporation Preferred B stock, and on April 10th, 1917, six hundred [600] shares United Publishers Corporation Preferred B stock, to be held by the undersigned as trustee for the use and purposes expressed in the declaration of trust executed by the undersigned in connection therewith on the date aforesaid; and
"Whereas the said Horace M. Swetland revoked said trust pursuant to the rights and privileges which he had reserved unto himself in connection therewith at the time of the establishment thereof; and
"Whereas the stock hereinbefore mentioned has been redelivered to me as trustee by the said Horace M. Swetland pursuant to the terms and conditions of the trust hereinafter set forth for the purpose of establishing and constituting a new trust in regard thereto in favor of my wife and children and for the purpose amongst others as hereinafter stated of applying the income from said stock for their support, education and maintenance.
"Now, therefore, in consideration of the premises and the sum of one dollar to me in hand paid by the aforesaid Horace M. Swetland, the receipt whereof is hereby acknowledged, I, Maurice J. Swetland, of Montclair, N.J., hereby acknowledge and declare that I am possessed of eleven hundred [1,100] shares United Publishers Corporation Preferred B stock, evidenced by certificates therefore numbered 204 and 319 in trust, and for the sole benefit, advantage and use of my wife and children, subject to the following conditions in regard thereto as imposed in connection therewith by the founder of said trust, to wit:
"1. To pay and apply the income received from the principal of said trust to the sole benefit, advantage and use of my wife and children, or the survivor or survivors of them until such time as my youngest living child shall reach thirty years of age, on the happening of which event the said trust shall terminate and the principal thereof and all additions thereto shall be distributed as hereinafter provided:
"2. That in the event of my death during the continuance of said trust, or if upon the happening of any event or for any reason, during said period, I shall consider it necessary or advisable in the best interest of my wife and children to cease to act as such trustee, that I shall have the right, power and authority to name as my successor or successors the trustee or trustees to carry out the trust herein provided for;
"3. That upon my youngest living child attaining the age of thirty years the principal of said trust and all additions thereto shall be *Page 203 
divided equally between and paid to my present wife, if then living, my children and the living issue of any deceased child or children of mine who shall take in equal parts the share or part which his or her parent and said deceased child of mine would have taken if living at the time aforesaid; that in the event of the death of my said wife before my youngest living child shall reach thirty years of age, and of the death of all my children before reaching thirty years of age, without leaving issue them surviving, that then and in that event the principal of said trust shall revert to and become a part of the residuary estate of the aforesaid founder thereof, Horace M. Swetland.
"4. That the founder of said trust, Horace M. Swetland, reserves at all times during his lifetime the personal rights, power and privilege of terminating the aforesaid trust, and that upon his election so to do, the aforesaid shares of stock constituting the principal thereof shall be returned and revert to him free and clear of any and all claims or demands whatsoever kind or nature, with the same force and effect as if the trust herein provided for had never been created, any law to the contrary notwithstanding.
"In witness whereof, I have hereunto set my hand and seal this 14th day of July, 1917.
"[Signed] MAURICE J. SWETLAND [L.S.]
"Witness: L.J. MONTGOMERY."
"State of New York, | ss. "County of New York, |
"On this 14th day of July, 1917, personally appeared before me Maurice J. Swetland, to me known and known to me to be the person described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same for the use and purposes therein set forth.
 "_________ _________, "Notary Public, New York County."
"I, Maurice J. Swetland, the trustee named in the foregoing declaration of trust, and pursuant to the power and authority therein contained, hereby nominate and appoint as my successor to administer the foregoing trust in the event of my death during the period thereof, Ernest M. Corey, of the borough of Manhattan, city, county and State of New York, and as his successor for said purpose in the event that he should fail or refuse to accept the administration of said trust, or for any reason become incapable of administrating the same, then and in that event I hereby nominate, constitute and appoint the Montclair Trust Company of Montclair, N.J., as my successor to carry out the terms and provisions of the trust aforesaid.
 "[Signed] MAURICE J. SWETLAND [L.S.] "Witness: _________ _________."
The testator was a publisher, actively engaged in a number of business enterprises at the time of his death. While he *Page 204 
was a man of above the average education, he was not a lawyer, nor was he familiar with the language of the law or the legal niceties resulting from its use. He left an estate valued at upwards of $1,500,000, producing an income of over $50,000 a year. Notwithstanding his large estate and his unfamiliarity with legal terms, he drew his own will without legal advice, using as a model an earlier will which had been prepared by able counsel. The complete will was composed of scraps from the earlier will, with crossed-out parts and interlineations, original memos, separate parts dictated at different times over a period of months, with intervals of weeks between the different parts, and then the whole transscribed by testator's stenographer and incorporated into "a complete and connected story of his will." I think it clearly appears that the will as completed was the result of patchwork and piecemeal construction, and, obviously, contains many errors in the use of words, rendering an interpretation and construction of some parts of the will difficult, and making necessary a reconstruction of the will in order to give effect to the apparent intention of the testator.
A part of testator's estate consists of a hotel on Forty-seventh street, New York City, known as the Hotel Manhattan. In his lifetime, the testator executed a bond to the Union Dime Savings Bank, dated February 5th, 1909, to secure the sum of $300,000, which, at the time of his death, had been reduced by payment to the sum of $210,000, and has now been reduced to $200,000. This bond was secured by a mortgage on said hotel property.
Numerous questions and issues are raised by the pleadings in this cause, but all of the defendants, with the exception of the defendants Johnson, are in entire agreement with complainants on those questions and issues. All parties, however, join in requesting the court to construe the will and to instruct the executors and trustees. The questions and issues raised may be stated as follows:
1. Should the $200,000 mortgage on the New York property be paid by the executors out of the personal estate?
2. Should the word "foregoing" in paragraph 3 of the will be construed to mean "following?" *Page 205 
3. Should the words "trust account," as used at the end of paragraph 15 of the will, be construed to mean "the income received by them from the principal of the trust account?" Or, stated in another way, What is the meaning of the words "trust account," as used at the end of paragraph 15 of the will?
4. Should the words "herein," as used at the end of the sixteenth paragraph of the will, be construed to mean "therein?"
5. Should the word "or," as used in the phrase "leaving no lawful issue her or me surviving," in the seventeenth paragraph of the will, be construed to mean "and?" In other words, is the word "or" used disjunctively or conjunctively?
6. Should the words "with regard," as used in paragraph 20 of the will, be construed to mean "without regard?"
7. Have the trustees discretionary power under paragraphs 11 to 15, both inclusive, of the will, to increase the widow's allowance of $15,000 per annum, and if so, under what circumstances?
8. Is the house known as "Jack's house," situated on the homestead grounds at Montclair, part of "the dwelling house and grounds attached thereto," the use of which is given to the widow for life?
9. Can the Montclair residence, the use of which is given to the widow for life, be sold by the executors with her consent and a portion of the proceeds invested in a smaller home for the widow?
10. Did the testator die intestate as to surplus income, and should that surplus income be presently distributed, or accumulated and held until the determination of the trust? And, if presently distributable, to whom should it be distributed?
11. Should the annuities and expenses incident to the administration of testator's estate be paid first from the income from the personally and New Jersey real estate before resorting to the income from the New York realty?
12. Are the administration expenses payable out of the surplus income or out of the corpus of the estate? *Page 206 
13. Is the bequest to Maurice J. Swetland, as trustee, as contained in paragraphs 16 and 17 of the will, valid?
I will consider these questions and issues in the order stated.
 1.
This is a question of exoneration. At common law, the heir or devisee was entitled to exoneration of the real estate from a mortgage by the payment thereof out of the personal estate (Hill v. Hill, 95 N.J. Eq. 233), but chapter 164 (P.L. 1924p. 375) directs that lands encumbered by mortgage pass to heirs or devisees subject to the mortgage, and unless the will expressly or impliedly directs otherwise, the heir or devisee is not entitled to exoneration. A will is effective as of the date of the death of the testator and is subject to laws then in force irrespective of the date of its execution. Doty v. Teller,54 N.J. Law 163; Holme v. Shinn, 62 N.J. Eq. 1. The will here involved was executed under date of January 12th, 1922. The testator died June 15th, 1924. The act above referred to became effective March 11th, 1924, so that this question must be decided in view of the provisions of that act. It is contended, however, by the defendants Johnson that this New York real estate is subject to New York laws, and that under the laws of that state exoneration is imperative. But counsel for these defendants is in error as to the New York law. In Smith v. Wilson, 79 N.J. Eq. 314,
Vice-Chancellor Stevenson said: "At an early period the State of New York abolished the right of the heir or devisee to exoneration in the class of cases under consideration," citing revised statutes (1829), page 749, paragraph 4. That this was a correct statement of the law appears from the note,29 A.L.R. 1247, where it is said: "In New York, by express statutory provision, devisees or heirs, in the absence of a different direction by the will, take the real estate, subject to any encumbrances against it," citing Farrell v. Farrell (1923),206 App. Div. 209; 200 N.Y. Supp. 561; In re McKinnon (1918),182 App. Div. 277; 169 N.Y. Supp. 416. See also note,5 A.L.R. 506, *Page 207 
and New York cases there cited. Irrespective, therefore, of which law governs, the executors are not obliged to pay this mortgage out of the personal estate.
 2.
One of the general rules of construction is that words "are, in all cases, to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative" (Jarm. Twenty-four Rules of Const.,No. 16), "and words which it is obvious are miswritten may be corrected." Ibid., No. 20.
"It is not a word, it is the intent of the testator manifested in his will, that is sacred and must prevail." Brown
v. Mugway, 15 N.J. Law 330; Elizabeth Trust Co. v. Clark,96 N.J. Eq. 550.
"The court will look at the circumstances under which the devisor makes his will * * * at the state of his property, of his family, and the like." Jarm. Twenty-four Rules of Const.,No. 10.
"Where the testator's intention is manifest from the context of the will and surrounding circumstances, but is endangered and obscured by inapt and inaccurate modes of expression, the language will be subordinated to the intention, and in order to effectuate such intention, as far as possible, the court may depart from the strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, and for such purpose may mold or change the language of the will such as by rejecting superfluous, absurd or repugnant words or phrases, or restricting them in their application; by supplying omitted words or phrases; by transposing words, expressions or sentences; or by substituting one word or phrase for another. This rule, however, applies only where it is necessary in order to effectuate the testator's intention, which is clearly apparent, but which has been defectively expressed in the will."40 Cyc. 1399; see, also, 2 Jarm. Wills (5th ed.) 840, 843; 1 Under.Wills 493 et seq., §§ 361 et seq.; Schoul. Wills, Exec. Admin. §§ 873 et seq.; 28 R.C.L. 225 § 187.
The second, third, fourth, fifth and sixth questions should be considered in view of, and governed by, the rules of law above quoted, and it seems to me that upon a careful reading of the will it becomes too obvious for any argument that the *Page 208 
second, third, fourth and sixth questions should be answered in the affirmative.
As to the second, the word "foregoing" is meaningless, and the word "following" was obviously intended, as otherwise the paragraph in which the word "foregoing" appears would have no application. There are no "foregoing devises and bequests," they are all following.
 3.
As to the third question, it is quite clear to me that the words "trust account" are used with reference to the income and not the principal. That this was the intent of the testator is evidenced by the language used in the preceding part of this fifteenth paragraph of the will, where the testator directs the trustees to pay taxes, assessments, c., "from the income received by them from the principal of the trust herein created." The words "trust account," used at the end of this paragraph, must be construed in the light of the preceding language. It is inconceivable that the testator would have provided for the payment of taxes, assessments, insurance, c., out of the income and the payment of repairs out of the principal. These items are usually budgeted together and the words "trust account," in my judgment, are merely a concise repetition, in effect, of the above-quoted language previously used in the same paragraph. I believe the testator, in using the words "trust account," had in mind the same fund out of which he directed taxes, c., to be paid. It will be further noted that the whole income of the trust estate is charged with the support and maintenance of the widow and the home property, the use of which was devised to her for life. The items of expense mentioned come under the head of support and maintenance of the widow and of the home property.
 4.
That the word "herein" should be read "therein" if it were not otherwise obvious, would conclusively appear from the use of the word "therein" under similar circumstances in the next succeeding paragraph. *Page 209 
 5.
With respect to the fifth question, it would seem that this is prematurely raised and a discussion of it would serve no useful purpose at this time. It is highly improbable that the question will ever be of any practical importance in the administration of this estate, and until the necessity arises the question should be left open. It will never arise unless all the Johnson defendants predecease the widow.
 6.
As to the sixth question, a consideration of the whole of paragraphs 18 to 21 of the will must be had in order to determine the intention of the testator. If the words here under consideration should be given the strict construction contended for by the Johnson defendants, then, obviously, much of the language of these paragraphs would be useless and meaningless. To my mind the language used evidences an intention on the part of the testator to give his executors and trustees the widest latitude in the matter of investments and to absolve them from any liability whatever in the event of loss resulting from any investments either of the testator or of his trustees. If the testator had not intended to use the word "without" instead of the word "with," so that this part of the will would read "and without regard to the question," c., then the succeeding language in that paragraph is inapt, unnecessary and useless. If the testator had intended that the trustees should be restricted to legal securities in their investments, he would have used the word "but" instead of "and" so that this phrase would have read "but with regard to the question," c., or the whole of paragraph 20 could have been omitted from the will.
But it is quite clear to my mind that the testator intended to use the word "without," and with this construction no question arises as to the meaning of this part of the will and there is no surplusage. *Page 210 
 7.
A consideration of the seventh question raised in this suit involves the construction of the word "misfortune" as used in paragraph 13 of the will and in considering the meaning of the language there used, "the entire will must be read in order to gather the testator's intention and no part is to be disregarded because it may be illegal. The first essential is to determine from everything in the testator's will what is to ascertain whether or not his meaning and intention can he meant should be done with his property, and the second be given legal effect. A man can do as he pleases with his own unless he runs counter to some rule of law or public policy." Matter of Fowles, 222 N.Y. 222.
"It is because testators do not always express themselves as exactly and as properly as others might have done that so much litigation arises over wills, and has forced the courts to say that the intention of the testator, when this can be gathered from the four corners of the will, must be carried out if not contrary to some rule of law." Ibid. As I read this will, it is apparent that the word "misfortune" as used, should be construed in its broadest possible sense. It is quite apparent to me that the testator, after having provided an annuity of $15,000 for his wife, in addition to the use of the homestead property, conceived the idea that that sum might be insufficient for "her competent and comfortable support and maintenance," and then decided to vest his trustees with absolute discretion to increase the amount of that annuity "as they may consider necessary or advisable," and in determining the intention of the testator in this connection, the objects and purposes of the will as a whole should be considered. The testator had an abundance of this world's goods and an inspection of his will discloses the purpose to devote the entire principal of his estate to the accomplishment of two primary objects or purposes during the lifetime of his widow and his half-sister; first, the payment of an annuity of $1,200, or such larger sum as might be necessary, to the half sister, and second, the payment of an annuity of $15,000 or *Page 211 
such additional sum as might be necessary, to the widow during her lifetime. No disposition whatever of any portion of the principal of the estate is made during the life time of the widow. Even that portion of the principal of the estate which is to produce the annuity for the half-sister is not to be distributed until after the death of the widow. These facts, coupled with the value of the estate, are significant of testator's intention. I think it may be fairly stated that the principal object and purpose of the testator was to provide for the competent and comfortable support and maintenance of his widow and that all other considerations were subservient to this. The Johnson defendants contend that testator's intention was to vest his trustees with the power to increase his widow's annuity only in the event of some great misfortune making such increase an absolute necessity. The construction of the word "misfortune" contended for by these defendants would restrict the meaning of the word to a great calamity or upheaval of nature, but if such restricted use of the word was intended by the testator, why was it necessary that this immense estate should be held intact during the lifetime of the widow? A misfortune is a miscarriage of fortune. One may be fortunate or unfortunate. If the latter, he suffers a misfortune. One may have the good fortune to have good health, or may suffer the misfortune of ill-health. Any unfortunate illness, whether mental or physical, is a misfortune. If one's living expenses are greater than one's income, that one is unfortunate and thereby suffers a misfortune. If, in the instant case, the testator did not provide out of his large estate ample means of support for his widow, she is unfortunate and as a necessary result has suffered a misfortune within the meaning of this word as used in the will. It is such a misfortune which, in my judgment, was in contemplation of the testator when he used that word. The testator's apparent object was to provide for his widow's comfort in the fullest measure; otherwise he would not have allowed his trustees any discretion at all. It would be foolish to say that the trustees might have the discretion to increase the annuity in the event of an upheaval *Page 212 
of nature or a great calamity affecting merely physical conditions at the homestead, and not in minor matters affecting the widow's comfort and health, and consequently putting her very life in peril: and yet, if the homestead were destroyed or swallowed up in an earthquake, I apprehend that even the Johnson defendants would admit that such a calamity would justify an increase of the annuity. If the word is to be used in the strict sense claimed for it by the defendants Johnson, where is the line to be drawn? What sort of a disaster would justify the trustees in the exercise of this discretion and who is to decide when such a catastrophe or upheaval of nature has occurred? Must the trustees on every occasion of this kind apply to the court for its determination as to the existence of circumstances which are within the meaning of the word "misfortune?" If so, then the trustees have no discretion. But the broad terms of this clause containing the word "misfortune" are an indication to me that this word was likewise used in its broadest sense and in considering this question it must be borne in mind that this will was written by the testator himself without the aid of legal advise. Hewitt v. Green, 77 N.J. Eq. 345. This broad construction of the word "misfortune" is further indicated by the circumstances surrounding the testator and his family and the fact that he had made prior substantial provision for his children; and the provisions for the half-sister, as contained in this will, should also be borne in mind. It could hardly be said that the testator was less interested in making adequate provision for his widow's comfort than he was in making provision for the future comfort of his half-sister, and yet it is admitted that full discretionary powers are given the executors and trustees with respect to increasing the annuity of the half-sister. I think it may be reasonably inferred from the will itself that the testator intended to be no less liberal with his widow than with his half-sister; and if this be so then this court ought to construe this will in a manner which will carry out that intention, if it can be done without doing violence to recognized legal rules of construction. *Page 213 
It appears that shortly after the testator's death and immediately after the reading of the will, the widow became nervous, wrought-up and hysterical over her apprehension that the provisions of the will for her were inadequate. Prior to testator's death, Mrs. Swetland had been an invalid for many years, and as a result of testator's death and her concern over the provisions of the will in her favor, she was obliged to go to a sanatorium. Her physical and mental condition prompted a hurried conference among the trustees and beneficiaries of the estate, as a result of which the trustees immediately increased the widow's allowance to $24,000 per annum. This was consented to by all parties except the Johnson defendants. The results of this increase were favorable to the widow's condition of health, particularly the mental condition, and were immediately apparent. Considerable testimony was taken on the question of whether or not the necessities of the widow required this increase, which has already been allowed by the trustees. The strong weight of the testimony indicates that the widow's reasonable requirements of support and comfortable maintenance are at least equal to this increased allowance; but, as I view it, even if the question were a debatable one, there being here no charge of proof of malafides, and the action of the trustees being apparently the result of an honest exercise of discretion vested in them by the testator, this court cannot interfere.
"Reference must always be had, in the execution of the power,to the end or purpose intended by the grantor of the power, and this end or purpose must be gathered from a construction of the written instrument, and a power must always be executed bonafide for the end and purpose designed." Perry Trusts § 511A.
In this connection, it is significant that of the four trustees, two are sons-in-law and one a son of testator and the widow, and whatever increase is allowed it to that extent, proportionately decreases the benefits which these three trustees or their families will ultimately receive from this estate.
The Johnson defendants, while denying the right of the *Page 214 
trustees to increase the widow's allowance, assert that they are willing to enter into an agreement with the other heirs whereby the trustees may increase that allowance, but insist that this is a matter of grace rather than of right. As already indicated, however, I am of the opinion that the trustees may increase the widow's allowance in their absolute discretion, and so long as that discretion is exercised honestly, this court has no power to interfere. Larkin v. Wikoff, 75 N.J. Eq. 462.
In the case last cited the court aptly said: "Where a power is given to trustees to do or not to do a particular thing at their discretion, the court has no jurisdiction to lay a command or prohibition upon them as to the exercise of that power, provided their conduct be bona fide and their determination is not influenced by improper motives." See, also, Reed v. Patterson,44 N.J. Eq. 211.
 8.
The Montclair property is the subject of one deed and was always used and assessed as a whole. "Jack's house" was built on these grounds by the testator for "Jack's" use, but it was occupied by him for only a short time. It is now vacant, and has been vacant since 1921, except for a short period of time when it was rented to strangers. The rental was discontinued because the testator did not want strangers near him, and from all that appears testator collected the rent. There is no dividing line between "Jack's house" and the homestead; no fence, nor in fact any physical mark indicating what portion of the grounds would be appurtenant to "Jack's house" if separated from the rest of the homestead property. No actual division or separation was ever made by the testator in his lifetime and this indicates to me that no separation was ever intended. The defendants Johnson contend that "Jack's house" and the land appurtenant thereto are not included in the devise to the widow for life and desire the court to separate "Jack's house" and a portion of the Montclair property from the homestead property. This court cannot assume the burden of dividing this property *Page 215 
to suit the whim of some of the beneficiaries under the will, even if any division had been intended by the testator. It is, however, all too obvious to me to admit of any argument that "Jack's house" is a part of the homestead property and intended by the testator to be included in this devise. See Ackerman v.Crouter, 68 N.J. Eq. 49; affirmed, 69 N.J. Eq. 839; Lanning v.Sisters of St. Francis, 35 N.J. Eq. 392; Inhabitants v.Bruch's Executor, 37 N.J. Eq. 483; Webb v. Carney,32 Atl. Rep. 705; Jackson v. Roe, 86 N.J. Eq. 373; Hartfield v.Penna. Co., 89 N.J. Eq. 45.
 9.
As the executors and trustees are vested with complete power of sale, it requires only the consent of the widow to empower them to sell the Montclair property. All parties to this suit are agreed that in the event of a sale the widow is entitled to the income from the proceeds of such sale. With respect to the power of the executors and trustees to invest a portion of the proceeds in a smaller home for the widow, it is pertinent to consider the broad powers of investment given them by the will. They have the broadest latitude in this respect, and if, in their judgment, the estate will be benefited by a sale of the Montclair property and an investment of a portion of the proceeds in other real estate for the use of the widow, they have ample power to make this sale and investment. See Smith v. Robinson, 83 N.J. Eq. 384, 389.
 10.
It is conceded by all parties that the testator died intestate as to the surplus income, and this is plainly apparent from a reading of the will. The only dispute is as to when this income is distributable and to whom it should be distributed. The defendants Johnson make a distinction between the New York and the New Jersey income and contend that the surplus income on the personal estate and the New Jersey realty is immediately distributable to the next of kin under the statute of distribution; but, as to the income on the New York realty, it is claimed that such income is directed *Page 216 
by the will to accumulate; that such direction is void under the New York law, and that by virtue of a New York statute this income is immediately distributable to the persons entitled to the next eventual estate under the will, namely, the three daughters, excluding the son on the theory that whatever share of the estate he gets is by virtue of the trust agreement, and that the trust agreement being incapable of incorporation in the will, as contended by the defendants Johnson, the son takes no share of the New York income.
The case of Whittaker v. Whittaker, 40 N.J. Eq. 33, is very similar in facts to the case at bar, except that there were specific legacies of $15,000 to each of two brothers and a sister and one of $20,000 to another brother. The court said that this indicated that it was not the testator's intention that these next of kin should further benefit from the estate until the final distribution. It will be noted that there is no provision in the will here involved for distribution of the income pending final distribution of the estate, nor is there anything whatever said with respect to the surplus income. It will also be noted that in the case at bar ample provision was made for the children prior to the testator's death by individual gifts to each. The testimony shows that approximately $1,000,000 was distributed in practically equal proportions amongst the children long prior to his death. This is a fact to be considered in determining the testator's intention with respect to surplus income, and, in connection with the fact that there is no mention in the will of surplus income, indicates to me that it was testator's intention that such income should be accumulated until the principal is distributable. In the late case of von Fell v. Spirling,97 N.J. Eq. 527, Mr. Justice Campbell, speaking for the court of errors and appeals, said: "The will is silent as to the income on retained shares or legacies, and there is nothing therein from which an intention of the testator can be inferred that it was his will and intention to distribute income and withhold principal of a share or legacy. In such a situation we think a reasonable construction must be that the income must be accumulated and paid at the time when *Page 217 
the principal of the share or legacy is payable under the terms of the will."
Applying that language to the facts in the instant case, it would seem that there should be no distribution of surplus income until the principal is distributed. The will which was involved in the Whittaker Case, above referred to, was again before our courts in the case of Clement v. Creveling (1914), 83 N.J. Eq. 318.
This was after the death of the widow, but before the death of the niece, and the court of errors and appeals then construed the portion of the will construed in the WhittakerCase in connection with another clause, viz.: "In case of the decease of my wife before that of Emma Chambers, I direct and require my executors `to retain sixty shares of the said stock and to pay the interest thereon to said Emma Chambers during her natural life.'"
The court held that distribution of the residuary estate should then be made, with the exception of the sixty shares of stock so directed to be held for the benefit of the niece. The court said (at p. 320): "We are of the opinion that the construction put upon this will by Chancellor Runyon was erroneous. We think it was not the testator's intent that the distribution of the whole of his residuary estate should be postponed until the death, both of his wife and her niece. Standing alone that would be the natural effect of the sixth paragraph of the will." (This is the paragraph considered in Whittaker v. Whittaker.) "In our opinion, by the sixth paragraph of the will the testator's estate vested in his brothers and sister at the time of the testator's death, subject to the life interest therein of his wife, and the interest of her niece; and upon the death of the wife such part of such estate as is not required to be retained for the benefit of the niece is distributable in equal parts to the respective personal representatives of the testator's brothers and sisters."
I do not understand the disapproval by the court of errors and appeals of Chancellor Runyon's decision in the Whittaker Case
went to the extent of reversing him with respect to his construction of the sixth paragraph of the will standing alone, but only to the extent that after the death of the wife the *Page 218 
whole estate need not be held and that all but the sixty shares of stock retained for the benefit of the niece could be distributed. In fact, the court said that standing alone the sixth paragraph of the Whittaker will would warrant the construction placed upon it by the chancellor, but also said that as the will, in a later paragraph, directed the retention of sixty shares of stock for the niece's benefit, that was, in effect, saying that the balance was to be distributed on the death of the wife. It would be much the same if in the instant case the wife predeceased the half-sister, provision for which contingency has, however, been made by the testator.
With respect to all surplus income except that from the New York real estate, my conclusion is that it should be accumulated until the death of the widow, at which time it may be distributed amongst those entitled under the intestate laws. This I believe to have been the intention of the testator and that intention applies equally to the New York income. But chapter 52, session laws of New York (1909), page 358 (consolidated laws of New York, vol. 4), apparently prohibits the accumulation of income on New York realty except for the sole benefit of minors in being when the accumulation is to commence and the accumulation must be determined at or before the expiration of such minority. This is conceded by all counsel. The directions for the accumulation of the New York income being void, such part of it as is not needed for the purposes of the trusts created by the will is distributable amongst those entitled to the next eventual estate.United States Trust Company v. Soher, 178 N.Y. 442; Matter ofKohler, 96 Misc. (N.Y.) 433. The "next eventuals" are named in the fifteenth paragraph of the will, and the class comprises the three daughters, and the son as trustee. St. John v.Andrews Institute, 191 N.Y. 254; Matter of Kohler, supra. Under the provisions of the will as here construed, however, all income, including that on the New York realty, is first applicable to the purposes of the trusts created by the will for the benefit of the widow and half-sister and before making any distribution of the surplus New York income, ample provision by way of reserve *Page 219 
should be made for the contingent requirements for the life tenants above current annuities.
 11.
Complainants contend that the annuities and expenses are first payable out of the income on the personalty and New Jersey realty and that resort to the New York income should be had only when the other income proves insufficient. My attention has been directed to no New Jersey cases dealing with this point, but counsel for complainants referred to Decker v. Vreeland,220 N.Y. 326, in which case a New Jersey will affecting New York real estate was involved and which supports the complainant's contention. It seems to me that under the circumstances of this case and in view of the New York statute prohibiting the accumulation of income from the New York realty, the income from the personalty and New Jersey realty should be first applied to the payment of annuities and expenses and the New York income should be next subject to these charges.
 12.
In all cases where the will contains no directions as to commissions or expenses of administration, specific legacies and bequests are not charged with them but are paid in full and the commissions are taken from the residue of such assets as are not disposed of. Fowler v. Colt, 22 N.J. Eq. 44. If commissions are to be taken from the residue or assets not disposed of, then all administration expenses should be thus paid and would be chargeable, first, to the surplus New Jersey income, and second, to the surplus New York income. They would be chargeable against the corpus only after the surplus income had been exhausted.
 13.
Complainants contend that the gift to Maurice J. Swetland, trustee, in paragraphs 16 and 17, can be sustained upon either of two theories — (a) upon the theory of incorporation *Page 220 
by reference, and (b) upon the theory that the trust agreement is not testamentary in character and may, therefore, be referred to for the purpose of defining and making certain the persons to whom, and the proportions in which, the estate is to be distributed. Counsel for all of the defendants, except the defendants Johnson, agree with this proposition; but it is claimed on behalf of the Johnson defendants that the rule of incorporation by reference is not in force in New Jersey, and that for this reason the gift cannot be sustained on that ground, and that the trust agreement referred to is testamentary in character and, as it is not executed in conformity with our statute of wills, it cannot be referred to for the purposes suggested by counsel for the complainants.
The English rule and the general rule in force in this country is that an extraneous document may be incorporated in a will by reference thereto whether or not the document is testamentary in character, provided (1) there is a testamentary reference in the will to the document; (2) that the document is described with sufficient accuracy as to insure its identity, and (3) that the document is actually in existence at the date of the will.28 R.C.L. 112 § 64; 40 Cyc. (Wills) ¶ 8; note, 68 L.R.A. 353;Allen v. Maddock, 11 Moo. P.C. 427, is the leading English case. One of the leading cases in this country is Newton v.Seamen's Friend Society, 130 Mass. 91; 39 Am. Rep. 433. It is contended on behalf of complainants and all defendants, except the defendants Johnson, that the English rule which "has been adopted" in most jurisdictions in this country is also in force in New Jersey, and in support of this proposition cite McCurdy
v. Neall, 42 N.J. Eq. 333; Smith v. Smith, 54 N.J. Eq. 1;affirmed, 55 N.J. Eq. 821; Condit v. Reynolds, 66 N.J. Law 242;Magnus v. Magnus, 80 N.J. Eq. 346; Condit v. DeHart,62 N.J. Law 78; Smith v. Runkle, 97 Atl. Rep. 296; affirmed, 86 N.J. Eq. 257.
On the other hand, counsel for the Johnson defendants insists that the doctrine of incorporation by reference is not in force in this state, and cite in support of that contention, *Page 221 
among other authorities, Hartwell v. Martin, 71 N.J. Eq. 157;Murray v. Lewis, 94 N.J. Eq. 681, and Smith v. Smith,supra.
But regardless of what the rule is in New Jersey with respect to the doctrine of incorporation by reference, and about which there sems to be some contrariety of view, I am of the opinion that this bequest is valid. By it the testator merely added additional property to a trust fund established by him years before the execution of his will under a valid, active trust, and to which he had from time to time during his lifetime added securities. The trust to which this bequest is added is not theoretical, nebulous, intangible or incapable of identification, but exists in fact, and the trustee-legatee is as distinct and definite an entity as would have been an individual or corporation legatee. In matter of Fowles, 222 N.Y. 222, two wills were involved, the will of the husband and the will of the wife. The case was considered on the basis of the wife's having survived the husband, although both lost their lives in the "Lusitania" disaster. It was held that under the husband's will the bequest was to the wife's executor. It was impossible to determine who were the beneficiaries of the bequest without consulting the wife's will. The gift was, nevertheless, sustained, notwithstanding the fact that New York does not recognize the doctrine of incorporation by reference. That case clearly held that a gift to an executor is a complete testamentary disposition. If this be true as to a gift to an executor, it must be equally true if the gift be to a trustee; and if the gift will pass to the beneficiaries under the will which the executor represents, it necessarily follows that the gift will pass to the beneficiaries under the trust agreement in the instant case.
If, during his lifetime, the testator had given certain moneys and securities to the X Bank, pursuant to an agreement providing that the subject of the gift should be held under certain trusts therein declared, and further providing that whatever property the testator should by will leave to the said bank should be added to said fund and held upon the said trusts, I apprehend that a bequest by that testator *Page 222 
to that bank, without mention of the trust agreement, would be valid, and that the trust as applied to such bequest would be enforceable by the beneficiaries. It should be none the less so if the testator had referred to the trust agreement in the will as indicative of the trusts under which the bequest was to be received and held; and if so, the bequest under consideration is also valid. Smith v. Smith, supra, held that "where the will fails to indicate what the purpose is, the court will not disregard a statute to supply that which the will omits." A trust there declared by will was held void because of indefiniteness, and this was in line with other decisions reaching the same result. Those decisions resulted from the inability of the court to determine the identity of the ultimate beneficiaries of the trust with certainty; but we are confronted with no such difficulty here. The will itself points the way and removes the difficulty by referring to the document naming the ultimate beneficiaries of the bequest. Nor is it necessary for us to here determine who are the ultimate beneficiaries of the Maurice J. Swetland trust; it is sufficient that such a trust exists and that the beneficiaries thereof are capable of identification. The trust to which this bequest is added was not created by the will, and, therefore, legal rules applicable to testamentary trusts are not uniformly applicable here. But if it be necessary in order to sustain this bequest to now determine the ultimate beneficiaries, authority is not wanting to warrant a reference to the trust agreement for that purpose. In Condit v. DeHart, supra, the testator devised his residuary estate to his son, and by a codicil authorized his son to dispose by will of his (testator's) residuary estate. He then left his residuary estate to such person or persons as his sons should designate and appoint by his will. The son died before the testator, but left a will in which, after reciting the power of appointment, he designated his wife as the person to whom his father's residuary estate should go. After the death of the son the father executed a second codicil to his will, ratifying and confirming the former codicil and the disposition of his residuary estate by the son's will. It was held: "The son *Page 223 
having died in the lifetime of his father, the will of the former, although not transferring his father's residuary estate by appointment, is to be referred to for the purpose of ascertaining the person to whom that estate passes by the fathers' will. The latter instrument effectuates what the son attempted to do but could not do by his own will." If in that case the court could refer to the son's will in order to determine the beneficiary of the father's will, I see no reason why, in the case at bar, the trust agreement executed by the son cannot be referred to for the purpose of determining the persons who are to ultimately receive the bequest. In re Piffard,111 N.Y. 410, was cited by the court in support of the decision inCondit v. DeHart. The facts in that case are similar to the New Jersey case, the same result was reached, and in announcing its decision the court said: "Her will, therefore, is referred to, not as transferring the property by appointment, but as defining and making certain the person to whom, and the proportions in which, the one-fifth should pass by the father's will in case of the death of the daughter in his lifetime; what she would have done by her will, but could not, that he did for her by his own will."
The same principle was involved In matter of Fowles, supra.
In the case at bar the trust agreement is not testamentary in character — it is not even executed by the testator — it is declaratory, merely, not dispositive. On the other hand, in theCondit, Piffard and Fowles Cases, the documents there referred to were testamentary in character, although not executed by the testator. They were dispositive, not declaratory.A fortiori, then, is the bequest now under consideration valid?
I will advise a decree in accordance with these conclusions. *Page 224